**SONG SUN HWANG, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 05–02–01805–CR.

Court of Appeals of Texas, Dallas.

March 25, 2004.

Ray Galvan, Jr. and Steven Yu, Dallas, for Appellant.

Laura Anne Coats, Assistant District Attorney, Dallas, for the State.

Before Justices MORRIS, WRIGHT, and RICHTER.

## OPINION

Opinion by Justice MORRIS.

In this case, Song Sun Hwang, a Korean immigrant who moved to the United States in 1990, challenges his conviction for trade-

mark counterfeiting. He makes two complaints on appeal. First, he asserts that he was not admonished about the consequences of his guilty plea because the trial court neither informed him of the punishment range for his offense nor told him he could be deported based on his guilty plea. Second, he contends he received ineffective assistance of counsel. We conclude the trial court reversibly erred by not informing appellant that a guilty plea could result in his deportation. Therefore, we reverse the trial court's judgment.

## I.

The State charged appellant with trademark counterfeiting of designer apparel. Appellant pleaded guilty and elected to have a jury decide his sentence. The trial court, however, never admonished appellant on the record about the punishment range for his offense or the possible deportation consequences of his plea.

During jury selection for the punishment phase of his trial, the trial court, the prosecution, and defense counsel at various times discussed the punishment range for appellant's offense. Appellant was present the entire time with an interpreter. At some point, a potential juror asked the prosecutor "if there are other sanctions that might be able to be discussed during the punishment phase ... [f]or instance, whether or not [he is a] citizen of the United States, and any other actions could be taken." The prosecutor responded as follows,

> That ... is normally what we consider collateral consequences.... [T]he only issue before the jury will be the proper punishment, and the judge will give you an instruction, the jury's charge. It's a document that will tell you ... what you are to consider, and more importantly, what you are not to consider in arriving at your punishment. And I think that's

about as—we're about to get into some danger areas. That's as clear an answer as I can give.

Later, appellant's attorney, when asking potential jurors whether they could be fair and impartial to an Asian defendant, noted that someone had already inquired whether the jury could consider, in the attorney's words, "something else like deportation." After the jury was selected, the State made, in appellant's presence, an oral motion in limine to prevent "the immigration status or citizenship status of [appellant]" from being mentioned before the jury because it was a "collateral issue." The trial court granted the motion.

After the jury determined appellant's punishment, the trial court signed a judgment on November 7, 2002. The judgment in appellant's case states, in part, "Where shown above that defendant entered a plea of guilty, defendant was admonished [sic] by the court of the consequences of the said plea and defendant persisted in entering said plea...." The trial court's jury charge also states that appellant persisted in entering his guilty plea "notwithstanding that the Court, as required by law, has admonished him of the consequences."

## II.

 In his first issue, appellant complains the trial judge reversibly erred by failing to admonish him about the punishment and deportation consequences of his guilty plea. A trial court errs if it accepts a defendant's guilty plea without admonishing him, in accordance with Texas Code of Criminal Procedure article 26.13, on the punishment range for his offense and the possible deportation consequences of his plea. *See Burnett v. State*, 88 S.W.3d 633, 637 (Tex.Crim.App.2002); *see also* TEX. CODE CRIM. PROC. ANN. art. 26.13(a) (Vernon Supp.2004). The State argues we must

presume from the jury charge and the boilerplate language of the judgment that appellant was admonished about the consequences of his plea. Both documents state that appellant was admonished about the "consequences" of his guilty plea and persisted in entering it. We are bound by the statements in these trial court records in the absence of direct proof of their falsity. *See Johnson v. State*, 72 S.W.3d 346, 349 (Tex.Crim.App.2002); *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex.Crim.App.1984).

■ The court of criminal appeals, however, has held that when a reporter's record is "clear" that a defendant was not admonished as required by article 26.13, then such fact is sufficient to overcome a recital in the trial court's judgment that he was. *See Ex Parte Battenfield*, 466 S.W.2d 569, 572 (Tex.Crim.App.1971), *overruled on other grounds, Ex Parte Taylor*, 522 S.W.2d 479 (Tex.Crim.App. 1975). After the court of criminal appeals issued *Battenfield*, article 26.13 was amended to allow a trial court to make the required admonitions in writing. *See* Act of May 23, 1987, 70th Leg., R.S., ch. 443, § 1, 1987 Tex. Gen. Laws 2021 (now codified at Tex.Code Crim. Proc. Ann. art. 26.13(d)). But if a trial court elects to deliver the admonitions in writing, "it *must* receive a statement signed by the defendant and the defendant's attorney that he understands the admonitions and is aware of the consequences of his plea." Tex. Code Crim. Proc. Ann. art. 26.13(d) (emphasis added). If the defendant is unable or refuses to sign such a statement, the court "*shall* make the admonitions orally." *Id.* (emphasis added). The purpose of article 26.13 is to ensure that only a constitutionally valid plea is entered by the defendant and accepted by the trial court. *Cooper v. State*, 45 S.W.3d 77, 80 n. 8 (Tex.Crim.App. 2001).

In this case, the reporter's record shows appellant pleaded guilty twice before the sentencing phase of his trial: once for the purpose of arraignment and once for trial purposes. He was not orally admonished about the punishment or deportation consequences of his plea on either occasion. Moreover, the record does not contain a written statement showing appellant understood any admonitions or consequences of his plea. Thus, because the record is clear that appellant was not admonished, we are not bound by the recitals in the judgment or the jury charge. *See Battenfield*, 466 S.W.2d at 572. The trial court erred in appellant's case by failing to admonish him about the punishment and deportation consequences of his guilty plea. *See Mitschke v. State*, 129 S.W.3d 130, 136 (Tex.Crim.App.2004).

■ Failure to admonish, however, is statutory, rather than constitutional, error. We therefore must examine the record in appellant's case to determine if the error affected his "substantial rights." *See Burnett*, 88 S.W.3d at 637; *see also* Tex.R.App. P. 44.2(b). If the error did not affect appellant's substantial rights, we must disregard it. *See* Tex.R.App. P. 44.2 (b). To warrant a reversal on direct appeal, the record must "support an inference that appellant *did not know* the consequences of his plea." *Burnett*, 88 S.W.3d at 638 (emphasis in original). A silent record may support such an inference. *See id.* If we have a "grave doubt" about whether the conviction was free from the substantial influence of the error, then we must treat the error as harmful. *See id.* at 637. "Grave doubt" occurs when the matter is so evenly balanced that the reviewing court feels the record is "in virtual equipoise as to the harmlessness of the error." *Id.* at 637–38. The critical inquiry is whether the trial judge's failure to admonish appellant materially affected his deci-

sion to plead guilty to the charge. *See id.* at 639. Accordingly, we must examine the record for indications· that appellant was not aware of the consequences·of his plea and was misled or harmed by the trial judge's failure to admonish him. *See id.* at 638.

· In this case, the record fails to support an inference that appellant did not know the punishment range for his offense. Although the trial court did not admonish appellant on the punishment range for his· offense, throughout jury selection the parties openly discussed the · punishment range at length in appellant's presence. The trial court administered an oath to an interpreter at the beginning of the proceedings. The interpreter was present the entire time. And nothing in the record shows appellant was unaware of the punishment range.[1] Therefore, even though the trial judge erred by failing to admonish appellant on the punishment consequences of his offense, appellant was not harmed. *See Aguirre–Mata v. State,* 125 S.W.3d 473, 476–77 (Tex.Crim.App.2003).

■■ The record is not so clear, however, about whether appellant was unaware of the deportation consequences of his plea. The record contains opaque references to deportation, but it is silent about whether appellant was actually informed that a guilty plea could result in his deportation. The State argues that the discussions of deportation and immigration during jury selection and the State's motion in limine on appellant's immigration status show appellant was informed that he could possibly be deported based on his guilty plea and, therefore, was not harmed by the trial court's failure to admonish him on the record. We disagree. This evidence only inferentially referred to the deportation

consequences of appellant's offense without ever making clear that appellant could, in fact, be deported as a result of his guilty plea. In contrast to the on-the-record discussion in appellant's presence about the punishment range for his offense, the record is silent about whether appellant was informed that his plea could result in "deportation, the exclusion from admission to this country, or the denial of naturalization under federal law." *See* Tex.Code Crim. Proc. Ann. art. 26.13(a)(4). The record does show, however, that appellant moved to the United States from Korea in 1990. It is obvious, therefore, that appellant's ability to enter a guilty plea freely and voluntarily is called into question by his apparent ignorance of the deportation consequences of that plea.

*Burnett* states that a silent record supports an inference that the appellant did not know the consequences of his plea. *See* 88 S.W.3d at 638. It does not, however, specify what constitutes a "silent" record. We conclude that a "silent" record, for these purposes, is one in which there is no indication the appellant was ever informed about the specific consequences of his plea. A record that shows the appellant was informed, by the court or in some other way, about the specific consequences of his plea creates a rebuttable presumption that the appellant knew those consequences. At that point, an appellate court may not reverse based on the trial court's failure to admonish unless the record specifically shows that the appellant in fact did *not* know the consequences of his plea. *See id.* Upon ·such a showing, the presumption is rebutted.

Here,. the record shows appellant was informed about the punishment range for

---

1. There is an indication in the record that appellant may have understood some spoken English.

his offense. But the record is silent about whether he was ever specifically informed that his guilty plea could result in his deportation. Based on the entire record before us, we are left with grave doubt on the deportation matter. The record supports the inference that appellant did not know the deportation consequences of his plea. *See Burnett*, 88 S.W.3d at 637–38. Those consequences were particularly material given that appellant is an immigrant. Appellant was harmed by the trial court's failure to admonish him on the deportation consequences of his guilty plea. We therefore resolve appellant's first issue in his favor. Due to our disposition of appellant's first issue, we do not reach his second issue.

We reverse the trial court's judgment and remand the cause for further proceedings.