Phillip J. WEBB, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 05–03–00710–CR, 05–03–00711–CR.

Court of Appeals of Texas,
Dallas.

Jan. 10, 2005.

Rehearing Overruled March 8, 2005.

Catherine Bernhard, Red Oak, for appellant.

Charles Patrick Reynolds, Asst. Dist. Atty., William T. (Bill) Hill, Jr., Dallas, for state.

Before Justices MORRIS, FITZGERALD, and FRANCIS.

## OPINION

Opinion by Justice FRANCIS.

Phillip J. Webb pleaded guilty to two charges of sexually assaulting his adopted daughter, and the jury set punishment at twenty years in prison and a $10,000 fine in each case. The trial court ordered that the sentences be served consecutively. In two issues, appellant argues the trial court reversibly erred in failing to admonish him, before accepting his pleas of guilty, that (1) he would be required to register as a sex offender and (2) he could be subject to consecutive sentences. We affirm.

On the day of trial, before a jury was selected, appellant pleaded guilty to two indictments alleging that he penetrated S.W.'s sexual organ and anus with his finger. Appellant elected for the jury to decide punishment. Before accepting appellant's pleas, the trial court orally admonished appellant regarding the range of punishment for the offenses, the right to have a jury determine guilt beyond a reasonable doubt, and his right not to testify. The trial court, however, did not admonish appellant on the record about the sex offender registration consequences of his plea. The trial court also did not tell appellant of the possibility of consecutive sentences.

Evidence at the punishment hearing showed that appellant had been the stepfather of S.W. and R.K. since they were toddlers. Appellant adopted S.W., but R.K.'s biological father would not relinquish his parental rights. Appellant began touching the girls inappropriately almost immediately. He began by pinching their nipples while playing a game. He also bathed both girls and continued to bathe S.W. until she was in the ninth grade. When the girls were in fifth or sixth grade, he began shaving their legs and trimming their pubic hair.

When S.W. began playing volleyball at school, appellant told her she needed to start wearing tampons, instead of pads. Over a period of time, appellant inserted several tampons into S.W. to teach her how to use them. At one point, appellant offered to teach S.W. how to French kiss,

but S.W. said it would be "gross." Appellant responded that it would not be gross if she would close her eyes and not think about it being him.

When the girls entered junior high, appellant routinely began performing vaginal "examinations" on them, supposedly to make sure they had cleaned themselves properly or did not have an infection. Appellant would have each girl lie on the bed completely naked with her legs apart while he inspected her vagina with a flashlight. S.W. estimated the examinations took about twenty minutes. During the inspections, S.W. said appellant would sometimes "try to point out like when you have sex, you have to break that skin. He would say yours is still there."

During one of the vaginal inspections, while S.W. was naked on the bed, appellant told S.W. he wanted her to know how sex felt. S.W. was reluctant, but appellant told her he was not "trying to get [her] off" and she would be okay. Appellant sat behind S.W. with his arms around her and rubbed her vagina with his hand. He put his finger in her vagina. During this time, S.W. said, appellant was "breathing heavy." S.W. said she was "uncomfortable" and tried to "squirm" away, but appellant told her to "hold still." Although S.W. had been "confused" in the past about some of appellant's conduct, she testified she was no longer confused after this incident. On three or four other occasions, appellant inserted his finger in her anus.

Appellant did not testify at the punishment hearing. Despite the fact he pleaded guilty, he defended against the allegations with suggestions that the girls had incorrectly perceived the events. In fact, his mother testified that she did not believe appellant had sexually abused the girls, only that he had acted "inappropriately." When asked whether she was aware that appellant had pleaded guilty to sexual assault, the mother said he pleaded guilty "[b]ecause he felt like that he was going to get 20 to 40 years" and he was hoping for probation.

In his first issue, appellant argues that his convictions must be reversed because the trial court failed to admonish him, before accepting his pleas of guilty, that he would have to register as a sex offender.

■ Article 26.13(a) of the Texas Code of Criminal Procedure requires the trial court to admonish a defendant, either orally or in writing, of the sex offender registration consequences of his plea. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(5), (d) (Vernon 1989 & Supp.2004–05). We have reviewed the record, and although the trial court gave appellant many admonishments, it did not warn him of the sex offender registration consequences of his plea. This total failure by the trial court violates the mandatory language of article 26.13(a) and constitutes error. The question is whether the error requires reversal.

■ We conduct the harm analysis of statutory errors under Texas Rule of Appellate Procedure 44.2(b), disregarding the error unless it affected appellant's "substantial rights." *See Burnett v. State,* 88 S.W.3d 633, 637 (Tex.Crim.App.2002); *Hwang v. State,* 130 S.W.3d 496, 499 (Tex. App.-Dallas 2004, pet. ref'd); *see also* TEX. R.APP. P. 44.2(b). We will not overturn the conviction unless, after examining the record as a whole, we conclude that the error may have had a "substantial influence" on the outcome of the proceeding. *Burnett,* 88 S.W.3d at 637. In other words, if we have a "grave doubt" about whether the conviction was free from the substantial influence of the error, then we must treat the error as if it did. *Id.* "Grave doubt" occurs when the matter is so evenly balanced that the reviewing court believes the

record is "in virtual equipoise as to the harmlessness of the error." *Id.* at 637–38.

■ In making this review, we are mindful that neither appellant nor the State has any formal burden to show harm or harmlessness under rule 44.2(b). *Burnett,* 88 S.W.3d at 638. Rather, this Court has a duty to assess harm after a proper review of the record. *Id.* We independently examine the record for indications that appellant was or was not aware of the consequences of his plea and whether he was misled or harmed by the trial court's failure to admonish on the sex offender registration consequences. *See id.*[1] We begin with the first prong.

■ To warrant a reversal on direct appeal, the record must "support an inference that appellant *did not know* the consequences of his plea." *Burnett,* 88 S.W.3d at 638 (emphasis in original); *Hwang,* 130 S.W.3d at 499. A silent record may support such an inference. *Burnett,* 88 S.W.3d at 638; *Hwang,* 130 S.W.3d at 499. A silent record, for these purposes, is one in which there is no indication that the appellant was ever informed about the specific consequences of his plea. *Hwang,* 130 S.W.3d at 500. A record that shows the appellant was informed, by the court or in some other way, about the specific consequences of his plea creates a rebuttable presumption that the appellant knew the consequences. *Id.*

In this case, there is no indication in the pretrial proceedings, voir dire, or otherwise that appellant was aware that he would have to register as a sex offender. The judge did not give the admonishment either orally or in writing, and the subject simply did not arise in any other context. Under these circumstances, we conclude an inference exists that appellant did not know the sex offender registration consequence of pleading guilty.

We next examine the record for indications of whether appellant was misled or harmed by the lack of the admonishment. "Harm" in this context means the appellant probably would not have pleaded guilty but for the failure to admonish. *See Carranza v. State,* 980 S.W.2d 653, 657–58 (Tex.Crim.App.1998). Our question then becomes, is there any indication in the record to suggest that if appellant *had* known he would be required to register as a sex offender, he either would or would not have still been willing to plead guilty? Our review of the record suggests appellant would have entered the guilty pleas, even if he had received the admonishment.

We begin with evidence adduced at punishment. It showed that appellant systematically sexually abused S.W. for years, taking advantage of his position as her father figure. The abuse included pinching her nipples as part of a "game," bathing her until her teenage years, shaving her legs and trimming her pubic hair, rou-

---

1. Although the State acknowledges that the admonishment is required by statute, it failed to analyze this case as statutory error. Instead, it argued sex offender registration was a collateral consequence of the plea, only substantial compliance with the statute was required, and appellant therefore had to make an "affirmative showing" of harm. To the contrary, when an admonishment is statutorily required and the trial court wholly fails to give it, there is no substantial compliance. *See Burnett,* 88 S.W.3d at 637 ("To claim that an admonishment was in substantial compli-

ance even though it was never given is a legal fiction."). In addition, determining whether sex offender registration is a collateral or direct consequence of the plea is unnecessary to our analysis because the admonishment was statutorily required. Regardless, sex offender registration is a direct, though nonpunitive, consequence. *Mitschke v. State,* 129 S.W.3d 130, 136 (Tex.Crim.App.2004). Finally, as explained above, in a statutory harm analysis, neither side has a burden to show harm or harmlessness under rule 44.2(b).

tinely examining her genital area, and inserting tampons into her vagina. S.W. testified she did not initially realize that this was not normal behavior by a father. Even when appellant inserted his finger in her anus, under the pretense of a medical exam, she was uncertain. Any uncertainty, however, dissolved once appellant decided to teach her "how sex felt."

Recognizing how these facts might play before a jury, the evidence showed that appellant decided to enter guilty pleas on the day of trial because he wanted to avoid twenty to forty years in prison and hoped he would be granted probation. In other words, the record suggests appellant used his guilty plea in an effort to gain an advantage in sentencing: he hoped the jury would be more lenient if he pleaded guilty. Given that appellant's desire was to avoid prison, we believe it unlikely he would have been unwilling to plead guilty had he known of the sex offender registration requirement.

This conclusion is further supported by the fact that appellant filed two post-verdict motions in this case and failed to raise this issue in either, despite the fact that the judgment clearly informed appellant that he would have to register as a sex offender. Examining the record as a whole, we are not left with a grave doubt in this case as to whether appellant's substantial rights were affected. In other words, the record supports a conclusion that appellant would have pleaded guilty even if he had been given the admonishment. We resolve his first issue against him.

In his second issue, appellant argues his plea was rendered involuntary by the trial court's failure to admonish him of the possibility of consecutive sentences. He argues that "stacking" is a direct consequence of his pleas of guilty and was "material" to his decision to plead guilty.

He further asserts there is nothing in the record to show that he was "even aware that 'stacking' was a possibility."

Appellant's last assertion is not supported by the record. To the contrary, the record contains evidence that stacking of sentences was discussed in appellant's presence during voir dire. On several different occasions, the prosecutor told the panel "only the judge can decide whether or not he wants that time in each case to run at the same time or to be stacked one on top of the other." Specific numbers were used to illustrate possible sentences involving concurrent and consecutive orders by the trial court. One member of the venire wanted to know whether the trial court intended to stack the sentences.

Additionally, appellant's mother testified that her son wanted to avoid a twenty- to forty-year sentence. Sexual assault is a second-degree felony. *See* TEX. PEN.CODE ANN. § 22.011(f) (Vernon Supp.2004–05). The maximum prison term for a second-degree felony is twenty years. *See* TEX. PEN.CODE ANN. § 12.33(a) (Vernon 2003). For appellant to receive forty years in these cases, the trial judge would have to impose consecutive sentences.

Contrary to appellant's assertion that there was no evidence that he was aware of the possibility of consecutive sentences, we conclude there is ample evidence that appellant was aware of the possibility that his sentences could be stacked. Under these circumstances, we cannot conclude appellant's pleas were rendered involuntary by the trial court's failure to admonish on the possibility the sentences would be stacked. *Cf. Burnett*, 88 S.W.3d at 641 (concluding trial judge did not err in failing to admonish on range of punishment when record contained evidence to show appellant knew range of punishment he

faced). We resolve the second issue against appellant.

We affirm the trial court's judgments.