In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00007-CR
______________________________


JOHNNY LEE RHEA, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 253rd Judicial District Court
Liberty County, Texas
Trial Court No. CR24806


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            In what seemed to be a sudden change of strategy, Johnny Lee Rhea pled guilty to two
charges of aggravated sexual assault of a child and to two charges of indecency with a child. A
Liberty County jury assessed punishment of thirty-five years for each aggravated sexual assault
conviction and twenty years for each indecency with a child conviction.


 The trial court ordered that
the sentences run concurrently. Rhea now appeals, contending the trial court committed reversible
error by failing to admonish him in accordance with Tex. Code Crim. Proc. Ann. art. 26.13. We
affirm the conviction.
I.         FACTUAL AND PROCEDURAL HISTORY
            Initially, Rhea insisted on pleading not guilty to the four counts alleging sexual abuse of his
stepdaughter. During voir dire, the trial court excused the jury panel and allowed Rhea to consider,
and ultimately reject, the State's final negotiated plea offer. In fact, he persisted in his plea of not
guilty until after a jury was empaneled. Following Rhea's rejection of the State's final offer, defense
counsel requested permission to make a record of his and Rhea's conversation. In the following
lengthy exchange, defense counsel confirmed he and Rhea had discussed the range of punishment
to which he was subject, Rhea's plea options, the sex offender registration requirement, and the
limitations on his right to appeal connected with a plea of guilty:
[Defense counsel]: Mr. Rhea, you and I have just momentarily talked. We've
had a chance to see a portion of the panel members' answers to the prosecutor's
questions, particularly in light of how they feel about punishment on child abuse
cases. You have filed a motion for probation in this case, and I know that you are
hoping to get probation, but it will be totally up to the jury.
 
[Rhea]: I understand.
 
[Defense counsel]: Do you understand that?
 
[Rhea]: Yes, sir, I do.
 
[Defense counsel]: The prosecutor has reopened the offer of 40 years. I have
indicated to you my concerns that the possibility of probation is very, very slight, you
know, once all of the evidence is out.
 
[Rhea]: Uh-huh.
 
[Defense counsel]: Now, whether I can sway a jury to that point or whether
I can sway them something under 40 years, only time can tell. Do you understand
that?
 
[Rhea]: Yes, sir, I do.
 
[Defense counsel]: If after everything I've put into it does not work, the jury
can come back with 60 years, 70 years, 80 years, 90 years, 99 or life, and at that point
there's no hiring King's X, I want to do the 40. There's no way.
 
[Rhea]: I understand that.
 
[Defense counsel]: Now, you and I have been working on our trial's strategy
over these last few months, correct?
 
[Rhea]: Yes, sir.
 
[Defense counsel]: Now, do you understand that you have a right to plead not
guilty and have the prosecutor pull all its witnesses in and make them testify and
confront them and cross–examine them and see if I can persuade the jury that you did
not in fact do what you're accused of. You understand?
 
[Rhea]: Yes, sir.
 
[Defense counsel]: Okay. And if you enter a plea of guilt before the jury and
the State presents just a teeny tiny bit of evidence that supports that plea, the Judge
has no choice but to instruct the jury that they must find you guilty. Do you
understand that?
 
[Rhea]: Yes, sir, I do.
 
[Defense counsel]: Okay. You do understand if a Judge instructs the jury to
find you guilty, the jury has no choice but to find you guilty. Okay?
 
[Rhea]: Yes.
 
[Defense counsel]: Okay. All right. You understand you have a right not to
have to testify. You know, you don't have to get up there on the witness stand if you
don't want to. Nobody can force you. And if you do not take the stand, the Judge
must tell the jury you are not to take that as any evidence of guilt. You understand?
 
[Rhea]: Yes, sir, I do.
 
[Defense counsel]: Okay. Now, if you were to take it and enter a plea of
guilty to the jury and the State presents just a little bit of evidence to support that --
that plea, do you understand that from a real practical standpoint there would be no
way an appeal will change the issue of whether or not you are guilty? If you enter a
plea, we go forward, the State presents some sort of evidence to support that plea, the
jury finds you guilty and assesses some punishment, that as far as the issue of
whether you are guilty or not guilty from a real practical standpoint, there will be
virtually no grounds for appeal. And there might be some technical things to play
with, but from a realistic aspect. Do you understand?
 
[Rhea]: Yes, sir, I do.
 
[Defense counsel]: Now, if you go that way and the jury decides they want
to go 99 years or life, then the only thing that an appeal could be based on is if the
Judge did something wrong in allowing some evidence in or keeping some evidence
out that should have been brought in; otherwise, you're just stuck with whatever
happens. Do you understand?
 
[Rhea]: Yes, sir, I do.
 
[Defense counsel]: Okay. Now, you and I have talked and I've recommended
to you that you enter a plea of guilty based on my assessment of the facts, what
you've described to me in our private conversations, and that is also based on the trial
tactic that if you come clean to the jury and the jury can sufficiently see remorse that
the punishment might -- and I say "might"-- be lighter than what they would give
someone who they think is trying to deny everything and not trying to change. And
I think we heard one or two of the panel members talk about somebody that has
changed, you know, if they've changed then their views would be different. 
However, this is just my recommendation and it's got to be your final choice because
this is your life that we're dealing with. I have no crystal ball.
 
[Rhea]: Okay. So I can plead not guilty or guilty.
 
[Defense counsel]: You have a decision to plead either not guilty or guilty,
to take the stand or not take the stand.
 
THE COURT: Or no contest.
 
[Defense counsel]: You do have the right to plead no contest if you choose
to do that.
 
[Rhea]: I don't understand no contest.
 
[Defense counsel]: No contest is basically saying I'm not going to contest the
issues of guilt, and then the prosecutor puts on their -- their evidence; and if their
evidence covers all the elements, then the Judge instructs the jury to find you guilty. 
Now, you understand that once you enter a plea of guilty, assuming the jury hears
sufficient evidence to support that plea, then whatever punishment is assessed, if it
is a prison term, then you would have to serve a minimum of one-half of that prison
term day for day before the Parole Board will even open up the book on you and see
whether or not they're going to start thinking about parole.
 
[Rhea]: Okay.
 
THE COURT: Or -- or what period of time?
 
[State]: 30 years, whatever is less.
 
[Defense counsel]: And even if the jury goes probation for the remainder of
your life, you would be obligated to register as a sex offender.
 
[Rhea]: I understand that.
 
[Defense counsel]: If the jury were to recommend probation, this Judge right
here would be called upon to determine the conditions of probation, which could
include some incarceration as a condition of probation, as well as very strict terms
related to what he felt like would be with rehabilitation and security of society.
 
[Rhea]: I understand that.
 
. . . .
 
[Defense counsel]: Now, with all of this in mind, do you wish to go forward
with the trial or do you wish to accept the offer of 40 years from the State?
 
[Rhea]: I wish to go forward.
 
[Defense counsel]: By choosing to go forward, do you wish to enter a plea
of guilty, not guilty or no contest?
 
THE COURT: I'm not going to make him make that choice at this point. 
He'll have that option after the indictment is read. I think you've made it very clear
what his options are, and then you can choose that from -- when you get before this
panel.

We note the trial court's—and even the State's—clarifications and additions to the information
relayed by defense counsel to Rhea during this recitation.
            Then, after the indictment was read, the trial court reminded Rhea of the available pleas, and
in the presence of the jury, Rhea decided to plead guilty. The trial court accepted Rhea's guilty pleas
without further inquiry and without objection: "All right. Your guilty pleas will be accepted and
we will move to the punishment phase in this trial." In a pro se motion for new trial, Rhea requested
new counsel and advanced arguments regarding trial counsel's effectiveness, the victim's age and
consent, the excessive punishment, and the sufficiency of the State's evidence. 
II.       APPLICABLE LAW: ARTICLE 26.13 ADMONISHMENTS
            Article 26.13 requires the trial court to issue the following admonishments before accepting
a plea of guilty or a plea of nolo contendere:
(1) the range of the punishment attached to the offense;
 
(2) the fact that the recommendation of the prosecuting attorney as to
punishment is not binding on the court. Provided that the court shall inquire as to the
existence of any plea bargaining agreements between the state and the defendant and,
in the event that such an agreement exists, the court shall inform the defendant
whether it will follow or reject such agreement in open court and before any finding
on the plea. Should the court reject any such agreement, the defendant shall be
permitted to withdraw his plea of guilty or nolo contendere;
 
(3) the fact that if the punishment assessed does not exceed the punishment
recommended by the prosecutor and agreed to by the defendant and his attorney, the
trial court must give its permission to the defendant before he may prosecute an
appeal on any matter in the case except for those matters raised by written motions
filed prior to trial;
 
(4) the fact that if the defendant is not a citizen of the United States of
America, a plea of guilty or nolo contendere for the offense charged may result in
deportation, the exclusion from admission to this country, or the denial of
naturalization under federal law; and
 
(5) the fact that the defendant will be required to meet the registration
requirements of Chapter 62, if the defendant is convicted of or placed on deferred
adjudication for an offense for which a person is subject to registration under that
chapter.
Tex. Code Crim. Proc. Ann. art. 26.13 (Vernon Supp. 2005). We note that, since Rhea did not
plead guilty pursuant to a negotiated plea agreement, subsections (2) and (3) are not relevant here. 
            In his first point of error, Rhea complains of the trial court's general failure to admonish him
in accordance with Article 26.13. In his second point of error, Rhea specifically complains of the
trial court's failure to admonish him regarding the sex offender registration requirements as required
by Article 26.13(a)(5). We find no authority that would support a different analysis of the trial
court's failure to warn Rhea of the sex offender registration requirement than that required of the trial
court's failure to otherwise warn a defendant in accordance with Article 26.13. Since both points of
error, in essence, make the same general contentions, we will treat them together as complaints that
the trial court failed to admonish Rhea in compliance with Article 26.13.
III.      ANALYSIS
            A.        Preservation of Rhea's Complaint
            A trial court's failure—whether partial or whole—to comply with the Article 26.13
requirement to admonish a defendant regarding the proper range of punishment is subject to a harm
analysis. See Aguirre-Mata v. State, 125 S.W.3d 473, 473 (Tex. Crim. App. 2003). An appellant
who complains about the trial court's failure to admonish on the range of punishment must have
preserved error. See Tex. R. App. P. 33.1; Mendez v. State, 138 S.W.3d 334, 342 (Tex. Crim. App.
2004) ("Except for complaints involving systemic (or absolute) requirements, or rights that are
waivable only, . . . all other complaints, whether constitutional, statutory, or otherwise, are forfeited
by failure to comply with Rule 33.1(a)."). Rhea did not object to the trial court's failure at the time
of the trial court's acceptance of his guilty plea or at sentencing. However, complaints of a trial
court's failure to comply with Article 26.13 can be preserved by a timely-filed motion for new trial. 
See Papillion v. State, 908 S.W.2d 621, 623 (Tex. App.—Beaumont 1995, no pet.) (relying on Issa
v. State, 826 S.W.2d 159, 160–61 (Tex. Crim. App. 1992)).
            Here, Rhea filed his own motion for new trial. Reading that motion liberally, we note that
Rhea maintained his innocence and stated that appointed counsel refused to move for a new trial or
to appeal and failed to protect Rhea's best interests. Rhea also argues that the State's evidence was
insufficient and that the thirty-five-year sentence was excessive, both points arguably raising the
issue that Rhea was unaware of the consequences of his plea of guilty. However, Rhea does not
specifically complain of the absence of Article 26.13 admonishments. 
            A complaint raised in a motion for new trial is not preserved unless the motion is presented
to the trial court. Tex. R. App. P. 21.6 (requiring presentment within ten days of filing); Carranza
v. State, 960 S.W.2d 76, 78–79 (Tex. Crim. App. 1998). To establish presentment, the record must
show that the movant brought the motion to the trial court's attention. Id. at 79. The mere filing of
a motion for new trial is insufficient to show presentment. Id. at 78. This requirement is satisfied
when the movant "actually deliver[s] the motion for new trial to the trial court or otherwise bring[s]
the motion to the attention or actual notice of the trial court." Id. at 79.
            Here, although the trial court's docket indicates it filed Rhea's motion for new trial, this
notation is not sufficient to show presentment. See Longoria v. State, 154 S.W.3d 747, 762 (Tex.
App.—Houston [14th Dist.] 2004, pet. ref'd); Hernandez v. State, 84 S.W.3d 26, 33 (Tex.
App.—Texarkana 2002, pet. ref'd).


 Since Rhea's motion lacks the requisite specificity to preserve
error and the record does not show Rhea's motion was timely presented to the trial court, we
conclude Rhea did not preserve error. Even if he would have done so, the trial court's failure to
admonish Rhea was harmless. 
            B.        Recitals in Jury Charge and Judgment Are Not Conclusive
            In its charge to the jury, the trial court recites that Rhea "has persisted in entering his plea of
guilty, notwithstanding that the Court, as required by law, has admonished him of the consequences." 
Similarly, the trial court's judgment states Rhea pled guilty, having been "admonished of the
consequences." The State relies on the rule that such "recitations are sufficient to show compliance
with Art. 26.13 . . . in the face of a silent record." See Creeks v. State, 537 S.W.2d 29, 30 (Tex.
Crim. App. 1976). The presumption of regularity created by the recitals can be overcome only when
the record otherwise affirmatively reflects that Article 26.13 was violated. Breazeale v. State, 683
S.W.2d 446, 449–50 (Tex. Crim. App. 1984) (op. on reh'g). A reporter's record that clearly shows
a defendant was not admonished is sufficient to overcome a recital in the judgment that he or she
was admonished. See Song Sun Hwang v. State, 130 S.W.3d 496, 498–99 (Tex. App.—Dallas 2004,
pet. ref'd). 
            C.        The Record Shows a Failure to Admonish Pursuant to Article 26.13
            Here, it is clear from the record Rhea was not admonished in compliance with Article 26.13.


 
When Rhea, obviously having changed his mind, pled guilty, the trial court readily stated only that
the pleas "will be accepted and we will move on to the punishment phase in this trial." Nowhere in
the record does the trial court specifically warn Rhea of the range of punishment, sex offender
registration, possible deportation if he is not a citizen, or any other of the consequences outlined in
Article 26.13. Texas caselaw makes it clear that such failure is error. See Burnett v. State, 88
S.W.3d 633, 636–37 (Tex. Crim. App. 2002); Webb v. State, 156 S.W.3d 653, 655 (Tex.
App.—Dallas 2005, no pet.).
            D.        Error Subject to Harm Analysis
            Before 1997, error such as we have here would result in automatic reversal of the conviction
and remand for a new trial. See Ex parte McAtee, 599 S.W.2d 335, 336 (Tex. Crim. App. 1980),
overruled by Ex parte Tovar, 901 S.W.2d 484, 486 n.2 (Tex. Crim. App. 1995); Lunsford v. State,
896 S.W.2d 394, 397 (Tex. App.—Beaumont 1995, no pet.). The courts reasoned that, where there
was a total failure to admonish, the danger of the defendant entering an unknowing and involuntary
plea is so great that no specific harm need be shown. See McAtee, 599 S.W.2d at 335–36. This rule
was applied in two cases procedurally similar to the instant case in that the respective defendant
initially indicated he wanted to plead not guilty. See Fuller v. State, 576 S.W.2d 856, 857 (Tex.
Crim. App. [Panel Op.] 1979); McDade v. State, 562 S.W.2d 487, 488 (Tex. Crim. App. [Panel Op.]
1978).
            However, this rule, on which Rhea specifically relies, no longer reflects the state of the law
in Texas. We have reviewed the Texas Court of Criminal Appeals' opinions on the issue of harm
analysis of Article 26.13 error, concentrating on the opinion in Aguirre–Mata, 125 S.W.3d 473. In
1997, the Texas Court of Criminal Appeals concluded that a trial court's failure to warn a defendant
in accordance with Article 26.13 was subject to harm analysis. See Cain v. State, 947 S.W.2d 262,
264 (Tex. Crim. App. 1997). After two standards of harm analysis were set forth, the court clarified
that error concerning Article 26.13 was subject to harm analysis for nonconstitutional error rather
than constitutional error, meaning that a reviewing court must disregard the error unless the record
shows that the error affected the defendant's substantial rights. See Tex. R. App. P. 44.2(b);
Carranza v. State, 980 S.W.2d 653, 656 (Tex. Crim. App. 1998).
            In conducting harm analysis, we must independently examine the record for indications that
a defendant was or was not aware of the consequences of his or her plea and whether he or she was
misled or harmed by the trial court's failure to admonish him or her of the punishment range. 
Burnett, 88 S.W.3d at 638. Therefore, our first inquiry should be whether the record supports an
inference that Rhea did not know the consequences of his plea. See id.; Song Sun Hwang, 130
S.W.3d at 499. A silent record supports such an inference. See Burnett, 88 S.W.3d at 638. If the
record supports such an inference, we move on to the second consideration: whether Rhea was
"misled or harmed" by the trial court's error. See id. "Harm" in this context means the appellant
probably would not have pled guilty but for the failure to admonish. See Carranza, 980 S.W.2d at
657–58.
            E.        Record Does Not Support a Finding that Error Affected Rhea's Substantial
Rights

            We do not have before us a silent record that would support an inference that Rhea was
unaware of the consequences of his guilty plea. See Burnett, 88 S.W.3d at 638. To the contrary, the
record shows that Rhea was present at voir dire examination, during which prospective jurors were
informed of the range of punishment for each offense and thoroughly examined by the State
regarding the range of punishment. 
            Additionally, we look to the thorough "recitation" between defense counsel and Rhea in
which they discuss Rhea's plea options and the respective consequences. This recitation lends a great
deal of support to the conclusion that Rhea did, in fact, know the consequences of a guilty plea. For
instance, as defense counsel explained the limitations on appeal associated with a guilty plea, he set
out the possibility that the jury could impose ninety-nine years or life: "[I]f you go that way [plead
guilty] and the jury decides they want to go 99 years or life . . . ." Also, Rhea rejected at least two
plea offers during which, judging from the information in the recitation, defense counsel and Rhea
most certainly would have discussed the consequences of Rhea's options.   In his second point of
error, Rhea specifically points to the trial court's failure to warn him regarding the requirement that
he register as a sex offender. While we acknowledge that defense counsel did not specifically outline
the details of registration, we also recognize that Rhea's response indicated he had discussed the
matter with defense counsel. Had this been the only mention of the requirement, we would expect
Rhea to respond with some degree of confusion or otherwise demonstrate surprise by the registration
requirement in much the same manner as he did regarding the mention of a plea of no contest: "I
don't understand no contest." Instead, Rhea responded that he understood he would be obligated to
register as a sex offender if he did decide to plead guilty. Likewise, the record fails to show that the
trial court's failure to warn Rhea that he would have to register as a sex offender somehow harmed
or misled Rhea into making the decision to plead guilty. From the recitation between Rhea and his
defense counsel, we see that a guilty plea was most likely a part of a "come clean to the jury" trial
strategy in the hope the jury would assess community supervision. See Webb, 156 S.W.3d at 657
(concluding that the record showed the appellant pled guilty in the hope of avoiding a twenty- or
forty-year sentence). 
            Finally, we find that Rhea could not have been misled or harmed due to the failure of the trial
court to admonish him of possible deportation. The evidence is that Rhea was born in Houston
September 9, 1968. Since Rhea is a United States citizen, the admonishment concerning deportation
was not applicable to him and the failure to advise him on that subject could not have misled or
harmed him.
IV.      CONCLUSION
            While Rhea's pro se motion failed to preserve error, we conclude the trial court's error in
failing to admonish Rhea in accordance with Article 26.13 would have been harmless. Since the
record would have failed to support an inference that Rhea was unaware ot the consequences of his
guilty plea, we would have been required to disregard such error.


 
            We overrule Rhea's points of error and affirm the trial court's judgment.
 

 
                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          October 13, 2005
Date Decided:             November 14, 2005

Publish