Affirmed and Opinion filed August 3, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00026-CR

___________________

 

Ignacio Gutierrez-Gomez,
Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 9th District Court

Montgomery County,
Texas



Trial Court Cause No. 07-05-05540-CR

 



 

 

OPINION

            Appellant Ignacio Gutierrez-Gomez was charged with two
counts of felony murder and two counts of failure to stop and render aid. 
After appellant pleaded guilty to all four counts, he was convicted and the
jury assessed punishment at life imprisonment on each count of murder and two
years’ confinement on each count of failure to stop and render aid.  In his
sole issue, appellant contends that the trial court’s failure to admonish him
regarding the possible deportation consequences of his guilty plea constitutes
reversible error.  We affirm.

I.                  
BACKGROUND

On March 25, 2007, appellant’s pick-up truck collided
with a car driven by Maria Ortiz in the 22600 block of the Eastex Freeway, in
Montgomery County, Texas.  Ortiz, her pregnant daughter, Vanessa, and Vanessa’s
unborn child were killed.  Appellant fled the accident scene but was later apprehended
by a Houston police officer.  Appellant submitted to a mandatory blood draw
approximately five hours after the accident which revealed a blood-alcohol concentration
of 0.19— more than two times the legal limit.[1]


Appellant was charged with two counts of felony murder
and two counts of failure to stop and render aid.[2]  After a jury was
selected, appellant pleaded guilty to all four counts.  The trial court orally
admonished appellant regarding his rights and the range of punishment and made
inquiries into appellant’s mental competence and the voluntariness of his
plea.  However, the court did not admonish him either orally or in writing
regarding the potential deportation consequences of his guilty plea.  In
accordance with the court’s instructions, the jury found appellant guilty of
the four charged offenses.  Following the presentation of evidence in the
punishment phase of the trial, the jury assessed appellant’s punishment at life
for each count of murder and two years’ confinement for each count of failure
to stop and render aid.  This appeal followed.

II.              
ANALYSIS

In his sole issue, appellant contends the trial court
erred in failing to admonish him regarding the possible deportation consequences
of his guilty plea in compliance with article 26.13 of the Texas Code of
Criminal Procedure.  He argues that, in failing to do so, his plea of guilty
was obtained in violation of due process under state and federal law.

Article 26.13 of the Texas Code of Criminal Procedure
requires the trial court to admonish a defendant, prior to his plea of guilty
or nolo contendere, of “the fact that if the defendant is not a citizen of the
United States of America, a plea of guilty or nolo contendere for the offense charged
may result in deportation, the exclusion from admission to this country, or the
denial of naturalization under federal law.”  Tex.
Code Crim. Proc. art. 26.13(a)(4) (Vernon 2008).  The record reflects,
and the State acknowledges, that appellant is not a United States citizen. 
Further, it is undisputed that the trial court failed to admonish appellant,
either orally or in writing, regarding the potential immigration consequences
of his plea.  In failing to do so, the trial court committed error.

The failure to admonish a defendant regarding the
immigration consequences of his plea is non-constitutional error.  See
Vannotrick v. State, 227 S.W.3d 706, 708 (Tex. Crim. App. 2007) (citing Carranza
v. State, 980 S.W.2d 653, 656 (Tex. Crim. App. 1998)).  This non-constitutional
violation of article 26.13 is subject to a harm analysis under Texas Rule of
Appellate Procedure 44.2(b), for those errors other than constitutional error.  Id. 
“Any other error, defect, irregularity, or variance that does not affect
substantial rights must be disregarded.”  Tex.
R. App. P. 44.2.  In applying Rule 44.2(b) to the failure to give an
admonition, the court considers the record as a whole to determine whether, in
this particular case, the error affected substantial rights.  Bessey v. State,
239 S.W.3d 809, 813 (Tex. Crim. App. 2007).  If it did, it is not harmless
error.  Id.

The critical inquiry in determining harm is,
“[C]onsidering the record as whole, do we have a fair assurance that the
defendant’s decision to plead guilty would not have changed had the court
admonished him?”  Vannotrick, 227 S.W.3d at 709 (quoting Anderson v.
State, 182 S.W.3d 914, 919 (Tex. Crim. App. 2006)).  In the “fair
assurance” analysis, we consider the following three issues: (1) whether the
appellant knew the consequences of his plea; (2) the strength of the evidence
of the appellant’s guilt; and (3) the appellant’s citizenship and immigration
status.  Id. at 712.

As noted above, appellant’s citizenship is not in
dispute.  The record reflects, and the State acknowledges, that appellant is
not a United States citizen.

            Next, we examine
the record for any indication that the defendant knew the consequences of his
guilty plea.  See id.  The Court of Criminal Appeals has noted that a
trial court’s failure to provide the applicable admonition would have far less
impact on a defendant’s decision to plead guilty if he were already aware of
the particular consequence.  See Anderson, 182 S.W.3d at 920 (calling of
defense witnesses during punishment phase, including probation officer who
testified regarding sex offender registration requirement, as part of defense
strategy to seek probated sentence was some evidence from which to infer
appellant had personal knowledge of registration requirement at time he entered
guilty plea).  To warrant reversal, the record must support an inference that
the defendant did not know the consequences of his plea.  See Burnett v. State,
88 S.W.3d 633, 638 (Tex. Crim. App. 2002).  A silent record would, of course, support
such an inference.  Id.; see Kelley v. State, 237 S.W.3d 906, 908
(Tex. App.—Houston [14th Dist.] 2007, pet. ref’d) (concluding that when record
is silent on immigration consequences of appellant’s guilty plea, court must
infer that defendant did not know consequences of his plea).  A reviewing court
may also consider record facts from which one would reasonably infer that a
defendant did know the consequences of his plea.  Burnett, 88 S.W.3d at
638.  It is ultimately the responsibility of the reviewing court to determine
whether the record supports or negates the defendant’s assertion of harm.  Id.
at 639.  If, after a conscientious examination of the record, the reviewing
court is left with “grave doubt” on the matter, the error is not harmless.  Id.
(citing O’Neal v. McAninch, 513 U.S. 432, 434, 115 S. Ct. 992 (1995))
(explaining that “[b]y ‘grave doubt’ we mean that, in the judge’s mind, the
matter is so evenly balanced that he feels himself in virtual equipoise as to
the harmlessness of the error”).

During the voir dire proceeding at which appellant
and an interpreter were present, the following exchanges took place:

PROSPECTIVE JUROR: Since the defendant is not a U.S.
citizen, what happens if it’s probated?

THE COURT: Repeat the question.

PROSECUTOR: Since the defendant is not a U.S. citizen, what
happens if it’s probated?

THE COURT: Well, I can’t speak for the I.N.S., but there’s
a hold to be put on him immediately at the beginning of his arrest.  In the
eventuality he is released, then he’s automatically deported.

So, let’s suppose that someone is convicted of a crime who
is an illegal alien or — we use that term, but really it’s an undocumented
alien.  There is no criminal — there is no criminal offense to be in this
country undocumented by either Federal law or state law.  It’s not a criminal
offense.  So when you say “illegal,” it gives its own connotation that it’s a
crime.  It’s not.  It’s just not proper and, therefore, the only thing that
the I.N.S. can do is deport them.

So if a person is convicted and sent to prison, when they
serve out their time, there’s a hold put on them.  I.N.S. comes, gets them
when they’re about to be released from Texas prison, and then they’re deported. 
They’re not just released out on the street.

So, if he was to get probation, it would be up to the
I.N.S. on what to do.  All likelihood, he would be deported.

. . . . 

PROSPECTIVE JUROR: Being an undocumented citizen from
Mexico, why was he not deported after the first offense or second offense?

THE COURT: You would have to ask the I.N.S. that.  You have
to ask the Feds.  And I might point out that the immigration laws are
exclusively left to the Federal government to enforce.  If a police officer
stops somebody, say, for speeding and it turns out they’re an undocumented
alien, he can’t do anything about it.  He can’t arrest him.  There’s no crime
being committed.  All he can do is take that information and report it to the
I.N.S.

. .
. . 

PROSPECTIVE JUROR: No, not at all.  I don’t have any
difficulties with a person coming to our country undocumented, and I wouldn’t —
I would treat him the same way, whatever the law allows.

DEFENSE COUNSEL: Does anyone feel differently on that subject? 
The two-part question, the first part I think we pretty well answered, how you
feel about undocumented immigration.  But the second part is how you would
assess punishment of who is here.

PROSPECTIVE JUROR: On the punishment end I believe deportation
should be expedited, a recourse when an undocumented commits a crime.

THE INTERPRETER: I’m sorry; I’m having trouble
hearing the jury, Your Honor.

PROSPECTIVE JUROR: I’m sorry.  I believe that an
undocumented individual, that deportation should be one of the first courses of
action when convicted of a crime; and that’s the only difference —

DEFENSE COUNSEL: That’s the only difference.

PROSPECTIVE JUROR: — between —   

DEFENSE COUNSEL: But in terms of leniency or —

PROSPECTIVE JUROR: No.

. .
. . 

PROSPECTIVE JUROR: I agree with him.  I don’t think I can
give probation to someone who — I don’t feel would — in the right conscience, I
could return a person like that to society if he’s had, you know, two prior and
I believe that he would — at that point he would be deported.

DEFENSE COUNSEL: Okay.  But the issue of whether he’s
deported is not in any of our hands.  This is something the Department of
Homeland Security will take care of.  My question to you is, can you
consider the full range of punishment, knowing that he might — if you put him
on probation, probably will be deported right away?

PROSPECTIVE JUROR: I’m not sure I could consider probation.

(emphasis added).

Article 26.13 requires the trial court to admonish a
non-citizen defendant that a guilty plea “may result in deportation, the
exclusion from admission to this country, or the denial of naturalization under
federal law.”  Tex. Code Crim. Proc. art.
26.13(a)(4) (emphasis added).[3] 
Although perhaps not a model of clarity, these references nonetheless informed
appellant that a guilty plea could result in his deportation, which is what
Article 26.13 requires.  See id.  Moreover, the statements regarding
deportation, taken together, provided more detail to appellant about the
potential impact of a guilty plea on his immigration status than what is
required under Article 26.13.

The issue of deportation was referenced approximately
five times: once by the trial judge, once by defense counsel, and three times
by prospective jurors.  There is nothing in the record showing that appellant
did not hear or understand the statements, that his interpreter was not present
the entire time, or that his attorney had not already told him the same thing. 
See Aguirre-Mata v. State, 26 S.W.3d 922, 925 (Tex. App.—Houston [1st
Dist.] 2000), aff’d, 125 S.W.3d 473 (Tex. Crim. App. 2003) (finding error
harmless where nothing showed that appellant did not hear and understand
prosecutor’s statements regarding punishment range, that appellant’s
interpreter was not present, or that appellant’s attorney had not already told
him same thing).[4] 
Further, there was no motion for new trial claiming that appellant was unaware
of the potential deportation consequences of his plea and that, if he had known
it, he would have pleaded not guilty.  See id.  These references to
deportation during voir dire support an inference that appellant knew the
consequences of his plea.  Burnett, 88 S.W.3d at 638 (noting reviewing
court may consider record facts from which to reasonably infer that defendant knew
consequences of plea).

Finally, in determining the effect of the court’s
error on appellant’s decision to plead guilty, we also consider the strength of
the evidence of appellant’s guilt.  In this case, the State presented
substantial evidence of guilt.  An eyewitness described seeing appellant’s
vehicle speeding and swerving before it collided with Ortiz’s car; four
witnesses and one police officer testified about appellant’s flight from the accident
scene; one witness and three police officers testified about the signs of
appellant’s intoxication, including a strong odor of alcohol, bloodshot eyes,
profuse sweating, slurred speech, an inability to stand without assistance, and
soiled pants; a cold, open beer bottle and some spilled liquid were found on
the driver’s side of appellant’s truck; and appellant’s blood alcohol concentration
measured 0.19 approximately five hours after the accident.  The defense
presented no evidence that appellant was not guilty but instead tried to
mitigate the damaging effect of the evidence.

Considering the record as a whole, we have fair
assurance that no substantial right was affected by the trial court’s error in
failing to admonish appellant regarding the possible deportation consequences
of his guilty plea.  As such, the error was harmless.  See Tex. R. App. P. 44.2(b).  Appellant’s
issue is overruled.

III.           
CONCLUSION

We affirm the judgment of the trial court.

                                                                                    

                                                                        /s/        Leslie
B. Yates

                                                                                    Justice

 

Panel consists of Justices
Yates, Seymore, and Brown.

Publish
— Tex. R. App. P. 47.2(b).









[1] See Tex. Transp. Code Ann. § 724.012(b)
(Vernon 2003) (requiring peace officer to take blood or breath specimen in
cases where person was killed or has suffered serious bodily injury as result
of car accident).





[2] Appellant had been
previously convicted three times of the offense of driving while intoxicated.





[3] The references to
deportation in this record are more compelling than those in Song Sun Hwang
v. State, 130 S.W.3d 496 (Tex. App.—Dallas 2004, pet. ref’d).  In Hwang,
the appellant pleaded guilty to trademark counterfeiting and elected to have a
jury decide his sentence.  See id. at 498.  The trial court, however,
never admonished appellant on the record about the punishment range for his
offense or the possible deportation consequences of his plea.  Id.

During jury selection for the punishment phase of the
appellant’s trial, a potential juror asked the prosecutor “if there are other
sanctions that might be able to be discussed during the punishment phase ...
[f]or instance, whether or not [he is a] citizen of the United States, and any
other actions could be taken.”  Id.  The prosecutor responded as
follows:

That ... is normally what we
consider collateral consequences.... [T]he only issue before the jury will be
the proper punishment, and the judge will give you an instruction, the jury’s
charge.  It’s a document that will tell you ... what you are to consider, and
more importantly, what you are not to consider in arriving at your punishment. 
And I think that’s about as--we’re about to get into some danger areas.  That’s
as clear an answer as I can give.

Id.  Later, appellant’s
attorney, when asking potential jurors whether they could be fair and impartial
to an Asian defendant, noted that someone had already inquired whether the jury
could consider, in the attorney’s words, “something else like deportation.”  Id. 
After the jury was selected, and in appellant’s presence, the State made an
oral motion in limine to prevent “the immigration status or citizenship status
of [appellant]” from being mentioned before the jury because it was a
“collateral issue.”  Id.  The trial court granted the motion.  Id.

On appeal, the appellant complained, among other
things, that he was not admonished about the consequences of his guilty plea
because the trial court did not tell him he could be deported based on his
guilty plea.  See id. at 498.  The State argued that the discussions of
deportation and immigration during jury selection and the State’s motion in
limine on appellant’s immigration status showed appellant was informed that he
could possibly be deported based on his guilty plea and, therefore, was not
harmed by the trial court’s failure to admonish him on the record.  See id.
at 500.  The Hwang court disagreed.  See id.  Instead, it found
that the evidence “only inferentially referred to the deportation consequences
of appellant’s offense without ever making clear that appellant could, in fact,
be deported as a result of his guilty plea.”  Id.  The court concluded
that “[t]he record contains opaque references to deportation, but it is silent
about whether appellant was actually informed that a guilty plea could result
in his deportation.”  Id.

Here, by contrast, the trial judge and defense counsel
explicitly discussed the possible deportation consequences to appellant in the
event of a conviction.





[4]
On one occasion, appellant’s interpreter had
difficulty hearing the proceedings:

PROSPECTIVE JUROR: On the
punishment end I believe deportation should be expedited, a recourse when an
undocumented commits a crime.

THE INTERPRETER: I’m
sorry; I’m having trouble hearing the jury, Your Honor.

PROSPECTIVE JUROR: I’m
sorry.  I believe that an undocumented individual, that deportation should be
one of the first courses of action when convicted of a crime; and that’s the
only difference —

As reflected above, the prospective juror repeated her statement as
soon as the interpreter made it clear that he had not heard it.