Patrick McCULLER, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–9600358–CR.

Court of Appeals of Texas,
Tyler.

Jan. 29, 1999.

Discretionary Review Refused
June 16, 1999.

Rehearing Overruled July 9, 1999.

William H. Wallace, Tyler, for appellant.

Edward J. Marty, Tyler, for appellee.

Before RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

### CORRECTED OPINION FOLLOWING MOTION FOR REHEARING

RAMEY, Chief Justice.

On December 7, 1998, this Court delivered its opinion in the above-referenced case. Thereafter, on December 22, 1998, the State filed a motion for rehearing challenging this Court's disposition of the appeal and pointing out that Appellant has had four previous convictions, which were not reflected in this Court's opinion. Although **we overrule the State's motion for rehearing**, we herewith withdraw our original opinion and substitute the following corrected opinion to make reference to Appellant's prior convictions:

After a plea of not guilty, Appellant, Patrick Roy McCuller, was found guilty by a jury of the offense of Injury to a Disabled Individual. The alleged victim was his wife, Jana McCuller ("Jana"). The jury assessed punishment at ninety-nine (99) years confinement in the Texas Department of Criminal Justice—Institutional Division. Appellant assigns two points of error. The first issue challenges the trial court's order overruling Appellant's motion to suppress certain photographs of the interior of Appellant's home taken by the independent executor of the estate of the owner of that house. Because Jana was the person to whom possession of the house had been granted and she was living with Appellant in the house as his wife, we will reverse and remand the case to the trial court.

A dispute as to the possession of the house had arisen between certain heirs of Arrie Secrest Robertson ("the decedent") and the McCullers. The McCullers had lived in the house for more than fifteen years. Jana was the decedent's granddaughter, and the decedent had lived with the McCullers in the house for a number of years before her death in 1992. Thereafter, the McCullers retained possession of the house under the terms of the following provisions of the decedent's will:

> Upon my death, and should I be survived by my granddaughter, Jana K. Thedford McCuller, I hereby grant Jana K. Thedford McCuller all rights and privileges necessary for her to live in my residence located at 1425 S. Augusta, Tyler, Smith County, Texas, and to use the furniture, fixtures and appliances located therein. Said granddaughter is to maintain said property, insure it for full

market value, and make payments for ad valorem taxes and ... Such right shall terminate upon her ceasing to live in said property as her residence and said property shall pass as set forth ...

Prior to May 1, 1995, the date of the entry into the house, Jana's brother, Bruce Robertson ("Bruce"), qualified as successor independent executor of the decedent's estate ("the Estate"). The Estate commenced proceedings to evict Jana and Appellant from the house on grounds that the McCullers had not complied with the terms of the will. The Estate further asserted that Jana's health was such that she could no longer live in the house. Appellant had resisted the Estate's eviction efforts.

According to the record, Jana has been an insulin-dependent diabetic since she was thirteen years of age; Appellant had cared for her at home for many years. On May 1, Jana, although in a very weakened condition, walked over to the home of a neighbor, Geneva Laird ("Laird") while Appellant was absent from the house. Jana requested food.[1] Laird gave her two tuna fish sandwiches, a bowl of fruit cocktail, a portion of string beans, six oatmeal cookies with cream centers and two glasses of iced tea with sweetener and two cups of coffee with sweetener. Then, after accompanying Jana back to her house, Laird reported the incident to a relative of Jana's, who suggested Laird contact Adult Protective Services. Adult Protective Services, in turn, notified the police of Jana's physical condition. The police ordered an ambulance for Jana, and Jana was hospitalized. She has thereafter resided in a health care facility, never returning to the residence at 1425 South Augusta.

Because of the deteriorated condition of her health, there was evidence that after Jana was taken to the hospital, Bruce was told by an unidentified health care person that Jana would not be able to reside in her residence in the future. An eviction hearing had been set for May 9, 1995, but Appellant did not appear at the time scheduled, and the court hearing was postponed. On the same day, Bruce and Leonard Craig ("Craig"), the attorney for the Estate, without a warrant or consent from the McCullers, entered the house. Entrance was gained by employing the services of a locksmith. At that time, "No Trespassing" notices were posted on each entrance to the house. After entering, Bruce took a number of photographs of the house's interior, which depicted trash, garbage and the unkempt, disorderly conditions of the interior of the premises. Although not requested by the police, prints of the photographs were delivered by Bruce to the authorities and thereafter admitted into evidence at the trial.

Appellant asserts that the trial court erred in denying his motion to suppress these photographs of the premises under the Texas exclusionary statute, Article 38.23 of the Texas Code of Criminal Procedure which provides:

No evidence obtained by an officer or other person in violation of any ... laws of the State of Texas, ... shall be admitted in evidence against the accused on the trial of any criminal case.

Tex.Code Crim. Proc. Ann. art. 38.23 (Vernon 1979).

Appellant alleges that the specific law violated here was the criminal trespass statute, Texas Penal Code § 30.05, which provides:

(a) A person commits an offense if he enters or remains on property or in a building of another without effective consent and he: (1) had notice that the entry was forbidden; ...

Tex. Pen.Code Ann. § 30.05 (Vernon 1994).

A pre-trial suppression hearing seeking to exclude the photographs was conducted in which two witnesses testified: Craig

---

1. Jana's request for food does not necessarily reflect poor home care. The medical evidence showed that one of the characteristics of a person suffering from diabetes is a continuing appetite for food.

and Karen Lynn Lane ("Lane"), the city detective who was assigned to investigate the case. The trial court denied the suppression motion as well as Appellant's objections to the photographs when offered at trial. At the trial on the merits, the court instructed the jury that if they found beyond a reasonable doubt that the photographer entered the premises without the legal right to do so, the photographs should be disregarded.

■ Our first inquiry is whether Appellant had standing to challenge the admissibility of the photographs. The doctrine of standing under article 38.23 remains viable in Texas. *Fuller v. State*, 829 S.W.2d 191, 202 (Tex.Cr.App.1992), *cert. denied*, 508 U.S. 941, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993). As stated, Appellant and Jana were married and had lived together in the subject house as their private dwelling for many years. Although the right to possession of the habitation was granted to Jana, both McCullers were the parties in possession of the premises at the time the photographs were taken. Here, as the husband and manager of the household, Appellant had a legitimate expectation of privacy in the house We conclude that Appellant had standing to assert the evidence suppression issue. *State v. Bassano*, 827 S.W.2d 557, 559 (Tex.App.—Corpus Christi 1992, pet. ref'd); *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979).

In denying the motion to suppress the photographic evidence, the court at the suppression hearing was the trier of fact. It could accept or reject any witnesses' testimony and resolve all conflicts in the evidence. *Alvarado v. State*, 853 S.W.2d 17, 23 (Tex.Cr.App.1993).

■ The photographs were taken by a private citizen, not a governmental entity. It has long been held that the Fourth Amendment of the United States Constitution prohibiting warrantless searches applies to searches conducted under governmental authority but does not extend to the conduct of private persons. *Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980); *Brimage v. State*, 918 S.W.2d 466, 479 n. 14 (Tex.Cr. App.1994); *Gillett v. State*, 588 S.W.2d 361, 363 (Tex.Cr.App.1979). Recently, in Texas, however, the plain language of Article 38.23 was construed to preclude the unlawful or unconstitutional actions of *all* persons, both governmental and private. *State v. Johnson*, 939 S.W.2d 586, 587 (Tex.Cr.App.1996). The prohibitions of Article 38.23 are thus extended to the conduct of private citizens Bruce and Craig in photographing the interior of the house at 1425 South Augusta.

■ Bruce, as independent executor of the Estate, was the representative of the Estate. TEX. PROB.CODE ANN. § 3(q) (Vernon Supp.1998). To violate the criminal trespass law, the trespassing party must enter upon the "property of another." TEX. PEN.CODE ANN. § 30.05 (Vernon 1994). "Another" is defined as a person other than the actor. TEX. PEN.CODE ANN. § 1.07(5) (Vernon 1994). The McCullers have never had an ownership interest in, nor a formal lease of the property; they have paid no consideration for their occupancy of the premises. Since decedent's death, the McCullers' tenancy has been subject to specific conditions in decedent's will.

■ A purpose of the criminal trespass statute was the protection of the privacy interests of the occupier. Criminal trespass of a *habitation* is a more serious offense than trespass of other property. TEX. PEN.CODE ANN. § 30.05(d). In summary, the McCullers together had occupied the house continuously for more than fifteen years, and they were the occupants of the premises at the time of the entry. Here, no consent to entry had been given. Appellant had posted "No Trespassing" signs, and the house was locked. The executor had no key. Instead, Bruce gained access by means of the professional services of a locksmith who broke the entry lock. At the time of Bruce's entry, the

McCullers' possession and occupancy of the house had not been terminated. In fact, Bruce had shortly before the entry left the setting of a court hearing to consider eviction of the McCullers at which no action on their eviction had been taken. From all these circumstances, we conclude that Appellant had a continuing legitimate expectation of privacy in the invaded space at the time of entry. One in possession of property, until removed, is entitled to peaceful and quiet enjoyment of those premises. *See L–M–S Inc. v. Blackwell*, 149 Tex. 348, 233 S.W.2d 286 (1950). We hold that Bruce's entry into the subject house was a prohibited search of the "building of another," and the trial court erred in denying Appellant's motion for suppression in violation of Article 38.23.

■ Next, we must consider whether the failure to sustain Appellant's motion for suppression amounted to reversible error. In this connection, we must determine whether the error is constitutional or one that could have affected Appellant's substantial rights. Tex.R.App. P. 44.2(a)–(b). If the error is constitutional, we apply Rule 44.2(a). Otherwise, we must apply Rule 44.2(b) and disregard the error if Appellant's substantial rights were not affected. Here, we are concerned with the violation of a state statute, Article 38.23, and with the conduct of private persons. We conclude that such conduct was not constitutional in nature, but we must nevertheless consider whether the failure to suppress the photographs could affect the Appellant's substantial rights.

■ "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Cr.App.1997), citing with approval *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946). In *Kotteakos*, the Supreme Court stated:

If, when all is said and done, the conviction is sure that the error did not influence the jury, or but had very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. But if one cannot say, with fair assurance, after pondering all that has happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.

■ In determining whether the error affected a substantial right belonging to the Appellant, we first observe that the punishment assessed Appellant was markedly harsh: 99 years confinement, the maximum punishment that could be meted out for this offense. We likewise note that Appellant's only prior convictions are for misdemeanors. The first, a DWI, occurred in 1976, and the last three—criminal trespass, carrying a prohibited weapon, and theft by check—were entered in September 11, 1995.

Furthermore, according to the State's medical expert, at the time that Jana was transported to the hospital on May 1, she suffered from only one serious medical problem: her elevated blood-sugar related to her long-standing diabetic condition. Yet, the record does not indicate that Appellant had any direct responsibility for the high blood-sugar reading. Appellant's testimony was not disputed that in keeping with his regular care of Jana, Appellant had tested Jana's blood-sugar level twice on the day of the incident and had likewise twice administered the insulin as had been his procedure for many years. Since Appellant was absent at the time that Jana went to the neighbor Laird's house, it is undisputed that Appellant had no part in supplying or approving the provision of the food that significantly affected Jana's blood-sugar level. Additionally, it was furthermore undisputed that Appellant for more than fifteen years had daily provided the personal care for Jana's diabetic condition necessary to her survival and permit-

ted her to live at home without medical or hospital care during this period.[2] In summary, the punishment was harsh, and it appears that Appellant's conduct was not directly instrumental in causing the seriously abnormal blood-sugar levels which resulted in Jana's hospitalization and subsequent medical care on May 1, 1995.

Other complaints about Appellant's care of Jana included photographs and testimony about Jana's skin condition and her matted, unclean, infested hair. According to the State's doctor, however, these conditions were not life-threatening. The record disclosed that Jana and Appellant's substandard general living conditions had remained unchanged for many years, extending back through the time that the decedent had lived with them.

A potentially aggravating circumstance in the record was the admission by Appellant that the reason for his absence from his home on the night in question was that he had had a liaison with a female acquaintance. He denied having sexual relations with this individual on other occasions and expressed remorse for this involvement.[3] In the light of society's contemporary mores, we are not persuaded that a jury would have assessed Appellant maximum punishment for this single indiscretion. It is furthermore noted that the evidence was not disputed that Jana, the disabled victim of Appellant's conduct, was, at material times, solicitous and supportive of Appellant and responded favorably to their relationship.

On the other hand, the photographs of the home's interior were highly graphic in portraying the specific squalid living conditions of Appellant's household. The conditions actually depicted by the viewing the photographs were extreme by any standard. Undoubtedly, the pictures were more graphic than the testimonial refer-

ences to the dirt and disarray of the house by the State's witnesses that were asked about those conditions. As the husband that was responsible for and physically able to improve the McCullers living conditions, it appears that Appellant was chargeable by the jury for this deplorable lifestyle as portrayed in the photographs. In summary and in light of the punishment assessed, we are unable to conclude with fair assurance that the erroneous admission of the photographs taken of the interior of the house had no substantial and injurious effect or influence in determining the jury's verdict. Appellant's first issue is sustained. It will, therefore, not be necessary to address the second issue.

The judgment of the trial court is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

---

2. There was testimony that Jana was comatose on one occasion in 1992. The record, however, does not disclose that this episode was diabetes-related or the consequence of poor care by Appellant.

3. Although not submitted as an excuse, it should be noted that Appellant testified that he had not had sexual relations with his wife for several years prior to May 1, 1995.