**Johnny Lee RHEA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–05–00007–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 13, 2005.

Decided Nov. 14, 2005.

Discretionary Review Refused
March 1, 2006.

George Stephen Hebert, Huffman, for appellant.

Michael A. Mark, Asst. Dist. Atty., Liberty, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

In what seemed to be a sudden change of strategy, Johnny Lee Rhea pled guilty to two charges of aggravated sexual assault of a child and to two charges of indecency with a child. A Liberty County jury assessed punishment of thirty-five years for each aggravated sexual assault conviction and twenty years for each indecency with a child conviction.[1] The trial court ordered that the sentences run concurrently. Rhea now appeals, contending the trial court committed reversible error by failing to admonish him in accordance with TEX.CODE CRIM. PROC. ANN. art. 26.13. We affirm the conviction.

## I. FACTUAL AND PROCEDURAL HISTORY

Initially, Rhea insisted on pleading not guilty to the four counts alleging sexual abuse of his stepdaughter. During voir dire, the trial court excused the jury panel and allowed Rhea to consider, and ultimately reject, the State's final negotiated plea offer. In fact, he persisted in his plea of not guilty until after a jury was empaneled. Following Rhea's rejection of the State's final offer, defense counsel requested permission to make a record of his and Rhea's conversation. In the following lengthy exchange, defense counsel confirmed he and Rhea had discussed the range of punishment to which he was subject, Rhea's plea options, the sex offender registration requirement, and the limitations on his right to appeal connected with a plea of guilty:

> [Defense counsel]: Mr. Rhea, you and I have just momentarily talked. We've had a chance to see a portion of the panel members' answers to the prosecutor's questions, particularly in light of

---

1. The grand jury returned two indictments against Rhea. In cause number 24,806, Rhea was charged with aggravated sexual assault of a child and with indecency with a child. The same charges were brought against Rhea in cause number 24,807 in connection with another date. The trial court consolidated the causes for trial. On appeal, Rhea challenges his conviction in cause number 24,806 in appellate cause number 06–05–00007–CR and challenges his conviction in cause number 24,807 in appellate cause number 06–04–00008–CR. He makes the same contentions in each cause.

how they feel about punishment on child abuse cases. You have filed a motion for probation in this case, and I know that you are hoping to get probation, but it will be totally up to the jury.

[Rhea]: I understand.

[Defense counsel]: Do you understand that?

[Rhea]: Yes, sir, I do.

[Defense counsel]: The prosecutor has reopened the offer of 40 years. I have indicated to you my concerns that the possibility of probation is very, very slight, you know, once all of the evidence is out.

[Rhea]: Uh-huh.

[Defense counsel]: Now, whether I can sway a jury to that point or whether I can sway them something under 40 years, only time can tell. Do you understand that?

[Rhea]: Yes, sir, I do.

[Defense counsel]: If after everything I've put into it does not work, the jury can come back with 60 years, 70 years, 80 years, 90 years, 99 or life, and at that point there's no hiring King's X, I want to do the 40. There's no way.

[Rhea]: I understand that.

[Defense counsel]: Now, you and I have been working on our trial's strategy over these last few months, correct?

[Rhea]: Yes, sir.

[Defense counsel]: Now, do you understand that you have a right to plead not guilty and have the prosecutor pull all its witnesses in and make them testify and confront them and cross-—examine them and see if I can persuade the jury that you did not in fact do what you're accused of. You understand?

[Rhea]: Yes, sir.

[Defense counsel]: Okay. And if you enter a plea of guilt before the jury and the State presents just a teeny tiny bit of evidence that supports that plea, the Judge has no choice but to instruct the jury that they must find you guilty. Do you understand that?

[Rhea]: Yes, sir, I do.

[Defense counsel]: Okay. You do understand if a Judge instructs the jury to find you guilty, the jury has no choice but to find you guilty. Okay?

[Rhea]: Yes.

[Defense counsel]: Okay. All right. You understand you have a right not to have to testify. You know, you don't have to get up there on the witness stand if you don't want to. Nobody can force you. And if you do not take the stand, the Judge must tell the jury you are not to take that as any evidence of guilt. You understand?

[Rhea]: Yes, sir, I do.

[Defense counsel]: Okay. Now, if you were to take it and enter a plea of guilty to the jury and the State presents just a little bit of evidence to support that-that plea, do you understand that from a real practical standpoint there would be no way an appeal will change the issue of whether or not you are guilty? If you enter a plea, we go forward, the State presents some sort of evidence to support that plea, the jury finds you guilty and assesses some punishment, that as far as the issue of whether you are guilty or not guilty from a real practical standpoint, there will be virtually no grounds for appeal. And there might be some technical things to play with, but from a realistic aspect. Do you understand?

[Rhea]: Yes, sir, I do.

[Defense counsel]: Now, if you go that way and the jury decides they want to go 99 years or life, then the only thing that an appeal could be based on is if the Judge did something wrong in allowing

some evidence in or keeping some evidence out that should have been brought in; otherwise, you're just stuck with whatever happens. Do you understand?

[Rhea]: Yes, sir, I do.

[Defense counsel]: Okay. Now, you and I have talked and I've recommended to you that you enter a plea of guilty based on my assessment of the facts, what you've described to me in our private conversations, and that is also based on the trial tactic that if you come clean to the jury and the jury can sufficiently see remorse that the punishment might—and I say "might"—be lighter than what they would give someone who they think is trying to deny everything and not trying to change. And I think we heard one or two of the panel members talk about somebody that has changed, you know, if they've changed then their views would be different. However, this is just my recommendation and it's got to be your final choice because this is your life that we're dealing with. I have no crystal ball.

[Rhea]: Okay. So I can plead not guilty or guilty.

[Defense counsel]: You have a decision to plead either not guilty or guilty, to take the stand or not take the stand.

THE COURT: Or no contest.

[Defense counsel]: You do have the right to plead no contest if you choose to do that.

[Rhea]: I don't understand no contest.

[Defense counsel]: No contest is basically saying I'm not going to contest the issues of guilt, and then the prosecutor puts on their—their evidence; and if their evidence covers all the elements, then the Judge instructs the jury to find you guilty. Now, you understand that once you enter a plea of guilty, assuming the jury hears sufficient evidence to support that plea, then whatever punish-

ment is assessed, if it is a prison term, then you would have to serve a minimum of one-half of that prison term day for day before the Parole Board will even open up the book on you and see whether or not they're going to start thinking about parole.

[Rhea]: Okay.

THE COURT: Or—or what period of time?

[State]: 30 years, whatever is less.

[Defense counsel]: And even if the jury goes probation for the remainder of your life, you would be obligated to register as a sex offender.

[Rhea]: I understand that.

[Defense counsel]: If the jury were to recommend probation, this Judge right here would be called upon to determine the conditions of probation, which could include some incarceration as a condition of probation, as well as very strict terms related to what he felt like would be with rehabilitation and security of society.

[Rhea]: I understand that.

. . . .

[Defense counsel]: Now, with all of this in mind, do you wish to go forward with the trial or do you wish to accept the offer of 40 years from the State?

[Rhea]: I wish to go forward.

[Defense counsel]: By choosing to go forward, do you wish to enter a plea of guilty, not guilty or no contest?

THE COURT: I'm not going to make him make that choice at this point. He'll have that option after the indictment is read. I think you've made it very clear what his options are, and then you can choose that from—when you get before this panel.

We note the trial court's—and even the State's—clarifications and additions to the

information relayed by defense counsel to Rhea during this recitation.

Then, after the indictment was read, the trial court reminded Rhea of the available pleas, and in the presence of the jury, Rhea decided to plead guilty. The trial court accepted Rhea's guilty pleas without further inquiry and without objection: "All right. Your guilty pleas will be accepted and we will move to the punishment phase in this trial." In a pro se motion for new trial, Rhea requested new counsel and advanced arguments regarding trial counsel's effectiveness, the victim's age and consent, the excessive punishment, and the sufficiency of the State's evidence.

## II. APPLICABLE LAW: ARTICLE 26.13 ADMONISHMENTS

Article 26.13 requires the trial court to issue the following admonishments before accepting a plea of guilty or a plea of nolo contendere:

(1) the range of the punishment attached to the offense;

(2) the fact that the recommendation of the prosecuting attorney as to punishment is not binding on the court. Provided that the court shall inquire as to the existence of any plea bargaining agreements between the state and the defendant and, in the event that such an agreement exists, the court shall inform the defendant whether it will follow or reject such agreement in open court and before any finding on the plea. Should the court reject any such agreement, the defendant shall be permitted to withdraw his plea of guilty or nolo contendere;

(3) the fact that if the punishment assessed does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attorney, the trial court must give its permission to the defendant before he may prosecute an appeal on any matter in the case except for those matters raised by written motions filed prior to trial;

(4) the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law; and

(5) the fact that the defendant will be required to meet the registration requirements of Chapter 62, if the defendant is convicted of or placed on deferred adjudication for an offense for which a person is subject to registration under that chapter.

TEX.CODE CRIM. PROC. ANN. art. 26.13 (Vernon Supp.2005). We note that, since Rhea did not plead guilty pursuant to a negotiated plea agreement, subsections (2) and (3) are not relevant here.

In his first point of error, Rhea complains of the trial court's general failure to admonish him in accordance with Article 26.13. In his second point of error, Rhea specifically complains of the trial court's failure to admonish him regarding the sex offender registration requirements as required by Article 26.13(a)(5). We find no authority that would support a different analysis of the trial court's failure to warn Rhea of the sex offender registration requirement than that required of the trial court's failure to otherwise warn a defendant in accordance with Article 26.13. Since both points of error, in essence, make the same general contentions, we will treat them together as complaints that the trial court failed to admonish Rhea in compliance with Article 26.13.

## III. ANALYSIS

### A. Preservation of Rhea's Complaint

A trial court's failure—whether partial or whole—to comply with the Article 26.13 requirement to admonish a defendant regarding the proper range of punishment is subject to a harm analysis. *See Aguirre–Mata v. State,* 125 S.W.3d 473, 473 (Tex.Crim.App.2003). An appellant who complains about the trial court's failure to admonish on the range of punishment must have preserved error. *See* Tex. R.App. P. 33.1; *Mendez v. State,* 138 S.W.3d 334, 342 (Tex.Crim.App.2004) ("Except for complaints involving systemic (or absolute) requirements, or rights that are waivable only, ... all other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)."). Rhea did not object to the trial court's failure at the time of the trial court's acceptance of his guilty plea or at sentencing. However, complaints of a trial court's failure to comply with Article 26.13 can be preserved by a timely-filed motion for new trial. *See Papillion v. State,* 908 S.W.2d 621, 623 (Tex.App.-Beaumont 1995, no pet.) (relying on *Issa v. State,* 826 S.W.2d 159, 160–61 (Tex.Crim. App.1992)).

Here, Rhea filed his own motion for new trial. Reading that motion liberally, we note that Rhea maintained his innocence and stated that appointed counsel refused to move for a new trial or to appeal and failed to protect Rhea's best interests. Rhea also argues that the State's evidence was insufficient and that the thirty-five-year sentence was excessive, both points arguably raising the issue that Rhea was unaware of the consequences of his plea of guilty. However, Rhea does not specifically complain of the absence of Article 26.13 admonishments.

A complaint raised in a motion for new trial is not preserved unless the motion is presented to the trial court. Tex.R.App. P. 21.6 (requiring presentment within ten days of filing); *Carranza v. State,* 960 S.W.2d 76, 78–79 (Tex.Crim. App.1998). To establish presentment, the record must show that the movant brought the motion to the trial court's attention. *Id.* at 79. The mere filing of a motion for new trial is insufficient to show presentment. *Id.* at 78. This requirement is satisfied when the movant "actually deliver[s] the motion for new trial to the trial court or otherwise bring[s] the motion to the attention or actual notice of the trial court." *Id.* at 79.

Here, although the trial court's docket indicates it filed Rhea's motion for new trial, this notation is not sufficient to show presentment. *See Longoria v. State,* 154 S.W.3d 747, 762 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd); *Hernandez v. State,* 84 S.W.3d 26, 33 (Tex.App.-Texarkana 2002, pet. ref'd).[2] Since Rhea's motion lacks the requisite specificity to preserve error and the record does not show Rhea's motion was timely presented to the trial court, we conclude Rhea did not preserve error. Even if he would have done so, the trial court's failure to admonish Rhea was harmless.

**B. Recitals in Jury Charge and Judgment Are Not Conclusive**

In its charge to the jury, the trial court recites that Rhea "has persisted in entering his plea of guilty, notwithstanding that the Court, as required by law, has admonished him of the consequences." Similarly, the trial court's judgment states Rhea pled guilty, having been "**admonished of the consequences.**" The State

---

**2.** No such notation is contained in the record in the companion case number 06–05–00008– CR.

relies on the rule that such "recitations are sufficient to show compliance with Art. 26.13 ... in the face of a silent record." *See Creeks v. State*, 537 S.W.2d 29, 30 (Tex.Crim.App.1976). The presumption of regularity created by the recitals can be overcome only when the record otherwise affirmatively reflects that Article 26.13 was violated. *Breazeale v. State*, 683 S.W.2d 446, 449–50 (Tex.Crim.App.1984) (op. on reh'g). A reporter's record that clearly shows a defendant was not admonished is sufficient to overcome a recital in the judgment that he or she was admonished. *See Song Sun Hwang v. State*, 130 S.W.3d 496, 498–99 (Tex.App.-Dallas 2004, pet. ref'd).

**C. The Record Shows a Failure to Admonish Pursuant to Article 26.13**

▮▮▮ Here, it is clear from the record Rhea was not admonished in compliance with Article 26.13.[3] When Rhea, obviously having changed his mind, pled guilty, the trial court readily stated only that the pleas "will be accepted and we will move on to the punishment phase in this trial." Nowhere in the record does the trial court specifically warn Rhea of the range of punishment, sex offender registration, possible deportation if he is not a citizen, or any other of the consequences outlined in Article 26.13. Texas caselaw makes it clear that such failure is error. *See Burnett v. State*, 88 S.W.3d 633, 636–37 (Tex. Crim.App.2002); *Webb v. State*, 156 S.W.3d 653, 655 (Tex.App.-Dallas 2005, no pet.).

**D. Error Subject to Harm Analysis**

Before 1997, error such as we have here would result in automatic reversal of the conviction and remand for a new trial. *See Ex parte McAtee*, 599 S.W.2d 335, 336 (Tex.Crim.App.1980), *overruled by Ex parte Tovar*, 901 S.W.2d 484, 486 n. 2 (Tex.Crim.App.1995); *Lunsford v. State*, 896 S.W.2d 394, 397 (Tex.App.-Beaumont 1995, no pet.). The courts reasoned that, where there was a *total* failure to admonish, the danger of the defendant entering an unknowing and involuntary plea is so great that no specific harm need be shown. *See McAtee*, 599 S.W.2d at 335–36. This rule was applied in two cases procedurally similar to the instant case in that the respective defendant initially indicated he wanted to plead not guilty. *See Fuller v. State*, 576 S.W.2d 856, 857 (Tex.Crim.App. [Panel Op.] 1979); *McDade v. State*, 562 S.W.2d 487, 488 (Tex.Crim.App. [Panel Op.] 1978).

However, this rule, on which Rhea specifically relies, no longer reflects the state of the law in Texas. We have reviewed the Texas Court of Criminal Appeals' opinions on the issue of harm analysis of Article 26.13 error, concentrating on the opinion in *Aguirre–Mata*, 125 S.W.3d 473. In 1997, the Texas Court of Criminal Appeals concluded that a trial court's failure to warn a defendant in accordance with Article 26.13 was subject to harm analysis. *See Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App.1997). After two standards of harm analysis were set forth, the court clarified that error concerning Article 26.13 was subject to harm analysis for nonconstitutional error rather than constitutional error, meaning that a reviewing court must disregard the error unless the

---

3. We acknowledge that Rhea's defense counsel provided Rhea with a great deal of information relating to Rhea's options and the consequences relating to each. However, an admonishment is not in substantial compliance with Article 26.13 if it comes from a source other than the trial court. *Murray v. State*, 561 S.W.2d 821, 822 (Tex.Crim.App. 1977). Under the current law, a defendant's knowledge concerning the consequences of his or her plea of guilty is relevant in determining whether the error is harmful. *Burnett*, 88 S.W.3d at 639–41.

record shows that the error affected the defendant's substantial rights. *See* TEX. R.APP. P. 44.2(b); *Carranza v. State,* 980 S.W.2d 653, 656 (Tex.Crim.App.1998).

▌ In conducting harm analysis, we must independently examine the record for indications that a defendant was or was not aware of the consequences of his or her plea and whether he or she was misled or harmed by the trial court's failure to admonish him or her of the punishment range. *Burnett,* 88 S.W.3d at 638. Therefore, our first inquiry should be whether the record supports an inference that Rhea did not know the consequences of his plea. *See id.; Song Sun Hwang,* 130 S.W.3d at 499. A silent record supports such an inference. *See Burnett,* 88 S.W.3d at 638. If the record supports such an inference, we move on to the second consideration: whether Rhea was "misled or harmed" by the trial court's error. *See id.* "Harm" in this context means the appellant probably would not have pled guilty but for the failure to admonish. *See Carranza,* 980 S.W.2d at 657–58.

### E. Record Does Not Support a Finding that Error Affected Rhea's Substantial Rights

▌ We do not have before us a silent record that would support an inference that Rhea was unaware of the consequences of his guilty plea. *See Burnett,* 88 S.W.3d at 638. To the contrary, the record shows that Rhea was present at voir dire examination, during which prospective jurors were informed of the range of punishment for each offense and thoroughly examined by the State regarding the range of punishment.

Additionally, we look to the thorough "recitation" between defense counsel and Rhea in which they discuss Rhea's plea options and the respective consequences. This recitation lends a great deal of support to the conclusion that Rhea did, in fact, know the consequences of a guilty plea. For instance, as defense counsel explained the limitations on appeal associated with a guilty plea, he set out the possibility that the jury could impose ninety-nine years or life: "[I]f you go that way [plead guilty] and the jury decides they want to go 99 years or life...." Also, Rhea rejected at least two plea offers during which, judging from the information in the recitation, defense counsel and Rhea most certainly would have discussed the consequences of Rhea's options. In his second point of error, Rhea specifically points to the trial court's failure to warn him regarding the requirement that he register as a sex offender. While we acknowledge that defense counsel did not specifically outline the details of registration, we also recognize that Rhea's response indicated he had discussed the matter with defense counsel. Had this been the only mention of the requirement, we would expect Rhea to respond with some degree of confusion or otherwise demonstrate surprise by the registration requirement in much the same manner as he did regarding the mention of a plea of no contest: "I don't understand no contest." Instead, Rhea responded that he understood he would be obligated to register as a sex offender if he did decide to plead guilty. Likewise, the record fails to show that the trial court's failure to warn Rhea that he would have to register as a sex offender somehow harmed or misled Rhea into making the decision to plead guilty. From the recitation between Rhea and his defense counsel, we see that a guilty plea was most likely a part of a "come clean to the jury" trial strategy in the hope the jury would assess community supervision. *See Webb,* 156 S.W.3d at 657 (concluding that the record showed the appellant pled guilty in the hope of avoiding a twenty- or forty-year sentence).

Finally, we find that Rhea could not have been misled or harmed due to the failure of the trial court to admonish him of possible deportation. The evidence is that Rhea was born in Houston September 9, 1968. Since Rhea is a United States citizen, the admonishment concerning deportation was not applicable to him and the failure to advise him on that subject could not have misled or harmed him.

## IV. CONCLUSION

While Rhea's pro se motion failed to preserve error, we conclude the trial court's error in failing to admonish Rhea in accordance with Article 26.13 would have been harmless. Since the record would have failed to support an inference that Rhea was unaware of the consequences of his guilty plea, we would have been required to disregard such error.[4]

We overrule Rhea's points of error and affirm the trial court's judgment.

---

4. We note that the Beaumont court, from which this case was transferred to us, recently applied the same reasoning to reach a similar conclusion in *Eleby v. State,* 172 S.W.3d 247, 248–49 (Tex.App.-Beaumont 2005, no pet. h.).