**David John BESSEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–05–00087–CR.

Court of Appeals of Texas,
Texarkana.

Submitted June 13, 2006.

Decided Aug. 2, 2006.

Tim Cone, Gilmer, for appellant.

Timothy Cariker, Asst. Dist. Atty., Mike Fetter, Upshur County Dist. Atty., Gilmer, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

After a jury found him competent to stand trial, and after the State abandoned six of the ten counts in its multi-count indictment, David John Bessey faced the

remaining charges alleged in the State's indictment. The first, third, and fourth counts charged Bessey with aggravated sexual assault of a child, a first-degree felony. *See* TEX. PEN.CODE ANN. § 12.32 (Vernon 2003) (first-degree felony punishment range); TEX. PEN.CODE ANN. § 22.021 (Vernon Supp.2005) (defining offense of aggravated sexual assault). The fifth count charged Bessey with injury to a child, a second-degree felony. *See* TEX. PEN.CODE ANN. § 12.33 (Vernon 2003); § 22.04 (Vernon Supp.2005). The trial court, on Bessey's behalf, initially entered "not guilty" pleas to each of these charges.[1] Bessey, however, changed his plea to "guilty" for each of the above-referenced counts once the jury was sworn and empaneled.

The trial court accepted Bessey's pleas, and the issue of punishment was submitted to the jury. The jury assessed Bessey's punishment for counts one, three, and four at imprisonment for life and a fine of $10,000.00. The jury assessed Bessey's punishment for count five at twenty years' imprisonment and a fine of $10,000.00. The trial court then ordered each of Bessey's sentences be served cumulatively. *See* TEX. PEN.CODE ANN. § 3.03(b)(2)(A) (Vernon Supp.2005). Bessey timely appealed and now raises six issues before this Court. We overrule each issue and affirm.

## I. Illegal Search

In his first point of error, Bessey contends the trial court reversibly erred by overruling his motion to suppress evidence. The testimony from the suppression hearing revealed Bessey's estranged wife, Virginia Bessey,[2] had found "some additional tapes at her home in Camp Joy...." (These videotapes showed Bessey molesting several different children, including some of the victims in this case.) Virginia contacted Upshur County Sheriff's Deputy Roxanne Warren regarding these videotapes and turned them over to Warren. However, when Virginia found the videotapes, she had not been living at the house; she had only been returning periodically to feed the dogs. Before obtaining the videotapes from Virginia, Warren did not first obtain a search warrant. Bessey now contends the videotapes are the product of an illegal search and seizure because Virginia was acting as an agent for the State when she searched the home and found the videotapes now in question.

A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *Mitchell v. State*, 931 S.W.2d 950, 953 (Tex.Crim.App.1996); *Randon v. State*, 107 S.W.3d 646, 651 (Tex. App.-Texarkana 2003, no pet.). If the trial court's evidentiary ruling is correct under any theory applicable to the case, we must sustain the court's decision to overrule the motion to suppress. *Gonzalez v. State*, No. PD-0247-05, 2006 WL 1688345, at *125, *126, 2006 Tex.Crim.App. LEXIS 1129, at *33 & *35 n. 48 (Tex.Crim.App. June 21, 2006); *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Felan v. State*, 44 S.W.3d 249, 253 (Tex.App.-Fort Worth 2001, pet. ref'd).

"It is a 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Brigham City, Utah v. Stuart*, 547 U.S. ——, at *3, 126 S.Ct. 1943, 1947, 164 L.Ed.2d 650, 657,

---

1. Bessey chose to remain silent during the arraignment proceedings, rather than make an oral plea to the charges.

2. To avoid confusion regarding parties with the same last name, we will refer to Virginia Bessey as "Virginia."

2006 U.S. LEXIS 4155, at *9, 74 U.S.L.W. 4253 (2006) (quoting *Groh v. Ramirez,* 540 U.S. 551, 559, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (some internal quotation marks omitted)). However, the Fourth Amendment does not require the exclusion of evidence that is the product of a search or seizure conducted by a private party. *Walter v. United States,* 447 U.S. 649, 656, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980) (referencing *Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); *Coolidge v. New Hampshire,* 403 U.S. 443, 487–90, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)); *see also Cobb v. State,* 85 S.W.3d 258, 271 (Tex.Crim.App.2002). To determine whether a private citizen should be deemed an "agent of the state," both the United States Supreme Court and the Texas Court of Criminal Appeals have adopted the following test: "[I]n light of all the circumstances, the private citizen must be regarded as acting as an instrument or agent of the state." *Coolidge,* 403 U.S. at 488, 91 S.Ct. 2022; *State v. Comeaux,* 818 S.W.2d 46, 49 (Tex.Crim.App. 1991) (plurality opinion).

Bessey cites *McCuller v. State,* 999 S.W.2d 801 (Tex.App.-Tyler 1999, pet. ref'd), for the proposition that, if the private citizen conducts the search and seizure for the express purpose of gathering evidence for the prosecution, such evidence must be excluded. In *McCuller,* the defendant was accused of injury to an elderly person, and the search at issue was conducted by the administrator of the homeowner's estate. *Id.* at 802–03. The administrator had employed the services of a locksmith to gain entry to the house, and "No Trespassing" signs were posted at each entrance to the home. *Id.* at 802. There had been an ongoing dispute in the probate proceedings between the administrator, the heirs, and McCuller regarding who had the right to possess (or enter) the home. *Id.* In fact, the estate had begun eviction proceedings against McCuller, but those proceedings were not final before the administrator gained entry into the home. *Id.* at 803. The Tyler Court of Appeals found the evidence showed the administrator had violated Section 30.05 of the Texas Penal Code (criminal trespass) by entering the home without legal or constructive authority.[3] *See* Tex. Pen. Code Ann. § 30.05 (Vernon 1994). In so doing, the evidence obtained as a result of the private citizen's illegal entry to the premises was subject to suppression because of Article 38.23 of the Texas Code of Criminal Procedure. *McCuller,* 999 S.W.2d at 804–05; *see* Tex.Code Crim. Proc. Ann. art 38.23 (Vernon 2005).

In this case, the State presented evidence in the trial court suggesting Virginia, who was still Bessey's legal wife, already had access to the home and had been feeding animals that were there. Bessey and Virginia still shared bills and other expenses, though Virginia apparently had constructive custody of the couple's children and lived elsewhere. Virginia had a key to the home, and, according to Warren, Virginia said she also had the owner's permission to be in the home.[4] Bessey presented no evidence that either he or the homeowner had imposed (or attempted to impose) any limits on Virginia's access to "her" home during this time in question. We are, therefore, left with the reasonable assumption that her access to the entire house was unfettered. Before finding the videotapes, Virginia had not been told by Warren to notify him if any evidence

---

3. No changes have been made to Texas' criminal trespass statute since 1994 that would affect the case currently before us.

4. Reportedly, Bessey's mother owned the home.

turned up in the house. The situation in this case is, therefore, factually distinguishable from the situation presented in *McCuller*. Clearly Virginia had a right to be in the home: she had a key, she had permission from the homeowner, and her access was unrestricted. In light of these facts, as well as the dearth of evidence regarding any pre-existing agreement between Virginia and any state official to act as an agent of the State, we are unpersuaded by Bessey's argument that Virginia was acting as an agent of the State.[5] Accordingly, the trial court properly concluded the Fourth Amendment's prohibition against warrantless searches does not serve to exclude the videotapes at issue. We overrule Bessey's first point of error.

## II. Adequacy of Guilty Plea Admonishments

In his second point of error, Bessey contends the trial court failed to properly admonish him regarding the consequences of his guilty plea. Before accepting an accused's guilty plea, a trial court is required to admonish the defendant about the following:

(1) the range of the punishment attached to the offense;

(2) the fact that the recommendation of the prosecuting attorney as to punishment is not binding on the court. Provided that the court shall inquire as to the existence of any plea bargaining agreements between the state and the defendant and, in the event that such an agreement exists, the court shall inform the defendant whether it will follow or reject such agreement in open court and before any finding on the plea. Should the court reject any such agreement, the defendant shall be permitted to withdraw his plea of guilty or nolo contendere;

(3) the fact that if the punishment assessed does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attorney, the trial court must give its permission to the defendant before he may prosecute an appeal on any matter in the case except for those matters raised by written motions filed prior to trial;

(4) the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law; and

(5) the fact that the defendant will be required to meet the registration requirements of Chapter 62, if the defendant is convicted of or placed on deferred adjudication for an offense for which a person is subject to registration under that chapter.

TEX.CODE CRIM. PROC. ANN. art. 26.13(a) (Vernon Supp.2005).

Before accepting Bessey's plea, the trial court admonished him regarding the available punishment range for each offense being tried. *See* TEX.CODE CRIM. PROC. ANN. art. 26.13(a)(1). The trial court did not administer the remaining admon-

---

5. *McCuller* also relies on *Jenschke v. State*, 147 S.W.3d 398 (Tex.Crim.App.2004). In that case, a private citizen obtained evidence incriminating the defendant by committing the criminal offense of burglary of a vehicle in violation of TEX. PEN.CODE ANN. § 30.04 (Vernon 2003). The Texas Court of Criminal Appeals held the evidence was inadmissible un-

der Article 38.23(a) of the Texas Code of Criminal Procedure because the private party had to commit a criminal act to obtain the evidence. TEX.CODE CRIM. PROC. ANN. art. 38.23(a). In this appeal, there is no evidence Virginia's search constituted illegal conduct; she had actual, as well as apparent, authority to be inside the house.

ishments required by Article 26.13. *See* Tex.Code Crim. Proc. Ann. art. 26.13(a)(2–5). Therefore, the trial court erred by failing to comply with the requirements of Article 26.13. Such error must, however, be preserved in the trial court by raising an objection. *Rhea v. State*, 181 S.W.3d 478, 484 (Tex.App.-Texarkana 2005, pet. ref'd) (citing Tex.R.App. P. 33.1; *Mendez v. State*, 138 S.W.3d 334, 342 (Tex.Crim.App. 2004)). Bessey lodged no objection during trial that the trial court had failed to fully comply with Article 26.13. And, unlike *Rhea*, Bessey did not raise this issue in his motion for new trial. Accordingly, Bessey has not preserved this issue for our review.

### III. Parole Instruction

▓▓▓▓ In his third point of error, Bessey contends the trial court erred by submitting an inaccurate parole instruction to the jury. "The function of the jury charge is to instruct the jury on applying the law to the facts." *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex.Crim.App.1994). "[A]n erroneous or an incomplete jury charge jeopardizes a defendant's right to jury trial because it fails to properly guide the jury in its fact-finding function." *Id.* "An erroneous or incomplete jury charge, however, does not result in automatic reversal of a conviction." *Id.* Instead, Article 36.19 of the Texas Code of Criminal Procedure outlines the path this Court should follow to review error in the charge: "[F]irst, the court must determine whether error actually exists in the charge, and second, the court must determine whether sufficient harm resulted from the error to require reversal." *Id.* at 731–32 (citing Tex.Code Crim. Proc. Ann. art. 36.19 (Vernon 1981), *and referencing Gibson v. State*, 726 S.W.2d 129, 132 (Tex.Crim.App.1987)). The subsequent evaluation of whether "sufficient harm" shall be found to require reversal "depends upon whether appellant objected." *Abdnor*, 871 S.W.2d at 732. "Where there has been a timely objection made at trial, an appellate court will search only for 'some harm.'" *Id.* "By contrast, where the error is urged for the first time on appeal, a reviewing court will search for 'egregious harm.'" *Id.* (*citing Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim.App.1986); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g)). "Egregious harm consists of errors affecting the very basis of the case or that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive." *Blumenstetter v. State*, 135 S.W.3d 234, 240 (Tex.App.-Texarkana 2004, no pet.). The degree of harm demonstrated by the appellant must be actual, not merely theoretical. *Almanza*, 686 S.W.2d at 174; *Taylor v. State*, 146 S.W.3d 801, 804 (Tex.App.-Texarkana 2004, pet. ref'd).

If a defendant is to be sentenced by a jury for the offense of aggravated sexual assault, our law requires trial courts to give juries the following instruction regarding parole:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

*Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.*

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

TEX.CODE CRIM. PROC. ANN. art. 37.07, § 4 (Vernon Supp.2005) (emphasis added) (referencing TEX.CODE CRIM. PROC. ANN. art. 42.12, § 3g (Vernon Supp.2005)). In the case now before us, the trial court gave the following instruction:

### 7.

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

*Under the law applicable to this case, if the defendant is sentenced to a term of imprisonment, he will become eligible for parole when the actual time served plus any good conduct time equals one-half of the sentence imposed.* Eligibility for parole does not guarantee that parole will be granted.

It cannot be accurately predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

(Emphasis added.)

■ Comparing the italicized portions of the statutory charge and the charge actually given, it is clear the trial court erred by suggesting Bessey's good conduct time would count toward his parole eligibility. Bessey did not object to the erroneous instruction at trial. He must, therefore, demonstrate egregious harm on appeal. *See Almanza,* 686 S.W.2d at 171.

■ To determine whether egregious harm exists, we must examine "the entire jury charge, the state of the evidence (including contested issues and the weight of the probative evidence), the ar-

gument of counsel, and any other relevant information revealed by the record as a whole." *Taylor*, 146 S.W.3d at 810 (citing *Stokes v. State*, 74 S.W.3d 48, 50 (Tex. App.-Texarkana 2002, pet. ref'd); *see Almanza*, 686 S.W.2d at 171). Bessey's brief on appeal makes no effort to evaluate egregious harm under the factors required by *Almanza*. As such, this point of error has been inadequately briefed. *See* TEX. R.APP. P. 38.1. Instead, Bessey's only argument is that the fact that he received the maximum sentence is sufficient evidence he suffered egregious harm. We disagree. A maximum sentence is not, *ipso facto*, egregious harm. Moreover, the jury was specifically instructed *not* to consider how parole law or good conduct time might be applied to Bessey. There is nothing in the record to suggest the jury considered how parole or good conduct time might apply to Bessey. We overrule Bessey's third point of error.

## IV. Improper Jury Argument

Bessey contends, in his fourth point of error, that the State made an improper jury argument regarding parole. The argument about which Bessey complains was as follows:

> The next thing I want to point out is on page 3 where it was talking about parole. Now you can't sit here and try to figure out how parole will apply in Mr. Bessey's case, *but you can take into* account the fact that it's possible that he may only do half of whatever you assess. And if you've noticed, you have a range of punishment on the first degree counts that goes anywhere from five to Life. On the second degree counts [sic] it goes two to twenty. And if you notice, I jumped immediately into parole because, see, I don't think this is a case where probation is an option. See, this is a case where we have multiple acts, we have multiple victims. This is not a case

> where it was just one person. I don't think parole [sic] is an option.

The Texas Court of Criminal Appeals has said there are four proper areas of jury argument: "(1) summation of the evidence presented at trial; (2) reasonable deduction drawn from that evidence; (3) answer to the opposing counsel's argument; or (4) a plea for law enforcement." *Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim.App.2000). As illustrated by this case, we believe a fifth area—long recognized as proper for jury argument, but not usually included in the laundry list— should be added: the trial court's charge to the jury. Assuming, without deciding, that the State's argument did not, viewed as a whole, constitute a plea for law enforcement, it was clearly a fair comment on an instruction given in the trial court's charge to the jury.

█ Further, Bessey acknowledges he failed to object at trial to the State's argument. He also acknowledges that such failure may waive error, if any. Bessey is correct. Unless the State's argument is "so egregious that no instruction to disregard could possibly cure the harm," the failure to object waives any alleged error. *Willis v. State*, 785 S.W.2d 378, 385 (Tex. Crim.App.1989).

We note that the State specifically reminded the jury that it could not—and should not—attempt to calculate what portion of a sentence Bessey might actually serve. This statement by the State, when combined with the trial court's written instruction that the jury was not to consider what effect parole law might have on Bessey's sentence, should have been sufficient to cure any alleged error in the State's closing summation. Therefore, we cannot say the State's argument in this case rises to the level of egregious harm. Accordingly, Bessey's failure to object to any alleged

improper argument failed to preserve the alleged error.

## V. Allowing Dr. Hall to Testify When He Was Not Previously Listed As a Witness

In his fifth point of error, Bessey contends the trial court erred by permitting Dr. John Hall to testify during the rebuttal portion of the State's punishment case. More specifically, Bessey claims the trial court erred because Hall was purportedly not included on the State's list of potential witnesses. At trial, however, Bessey first objected to Hall's testimony for a different reason. Bessey first claimed that Hall should not be allowed to testify, not because Hall was an unlisted witness, but because Bessey did not receive advance notice Hall would be testifying about "rehabilitation or punishment." It is clear Bessey's objection on appeal does not comport with his initial objection presented at trial. Accordingly, nothing has been preserved for our review. *See* TEX.R.APP. P. 33.1; *Mumphrey v. State*, 155 S.W.3d 651, 656 (Tex.App.-Texarkana 2005, pet. ref'd) (because trial objection did not match appellate issue, error regarding improper admission of expert testimony not preserved).

Hall initially testified as to his background and credentials, and then, generally, concerning the treatment of pedophiles. Bessey interrupted this testimony with a further objection, in the middle of which he stated that "nothing has been furnished to me showing that Dr. Hall was going to testify." To the extent this further objection was consistent with Bessey's objection now on appeal, it was untimely. To preserve error, the objection must be made at the earliest possible opportunity. *Marini v. State*, 593 S.W.2d 709, 714 (Tex. Crim.App. [Panel Op.] 1980); *In re G.A.T.*, 16 S.W.3d 818, 828 (Tex.App.-Houston [14th Dist.] 2000, pet. denied); *see Stults v. State*, 23 S.W.3d 198, 205–06 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). We overrule Bessey's fifth point of error.

## VI. Ineffective Assistance

Finally, Bessey contends he received ineffective assistance of counsel at trial because trial counsel (1) "failed to lodge a proper objection to the inaccurate parole instruction," (2) "failed to make a timely and specific objection to the State's closing argument," and (3) "failed to ensure the record was "clearer regarding the continuation of certain pretrial motions as they related to all indictments."

To prevail on a claim of ineffective assistance of counsel, an appellant must prove trial counsel's performance fell below objective standards of professional norms and that, but for such deficiency, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim.App.2002). It is critical that an appellant demonstrate the record shows both the alleged deficiency(ies) and the alleged prejudice. *Bone*, 77 S.W.3d at 833–34; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App.1999). A failure to prove either prong will defeat the ineffective assistance claim. *Thompson*, 9 S.W.3d at 813.

Bessey's brief to this Court makes no effort to demonstrate how the record demonstrates prejudice under *Strickland's* second prong. Accordingly, we must overrule Bessey's second issue as being inadequately briefed. *See* TEX.R.APP. P. 38.1(h). Moreover, the Texas Court of Criminal Appeals has often reminded the bench and bar that "[i]n the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Thompson*, 9 S.W.3d at 813–14. The record in this case

is silent as to why trial counsel did not object to the State's closing argument, did not object to the parole instruction, and did not take other steps to see that the rulings for pretrial motions filed in other cases were made applicable to this case. We could reasonably presume a strategic justification to support each alleged deficiency. Further, although the record is silent as to these matters, it affirmatively shows that trial counsel was diligent, thorough, and aggressive in his representation of Bessey. The record before us belies Bessey's claim that his trial counsel was ineffective.

## VII. Conclusion

For the reasons stated, we overrule each of Bessey's points of error and affirm the trial court's judgment.