In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00087-CR
______________________________


DAVID JOHN BESSEY, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 13,787


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          After a jury found him competent to stand trial, and after the State abandoned six
of the ten counts in its multi-count indictment, David John Bessey faced the remaining
charges alleged in the State's indictment. The first, third, and fourth counts charged
Bessey with aggravated sexual assault of a child, a first-degree felony. See Tex. Pen.
Code Ann. § 12.32 (Vernon 2003) (first-degree felony punishment range); Tex. Pen. Code
Ann. § 22.021 (Vernon Supp. 2005) (defining offense of aggravated sexual assault). The
fifth count charged Bessey with injury to a child, a second-degree felony. See Tex. Pen.
Code Ann. § 12.33 (Vernon 2003); § 22.04 (Vernon Supp. 2005). The trial court, on
Bessey's behalf, initially entered "not guilty" pleas to each of these charges.


 Bessey,
however, changed his plea to "guilty" for each of the above-referenced counts once the jury
was sworn and empaneled. 
          The trial court accepted Bessey's pleas, and the issue of punishment was submitted
to the jury. The jury assessed Bessey's punishment for counts one, three, and four at
imprisonment for life and a fine of $10,000.00. The jury assessed Bessey's punishment
for count five at twenty years' imprisonment and a fine of $10,000.00. The trial court then
ordered each of Bessey's sentences be served cumulatively. See Tex. Pen. Code Ann.
§ 3.03(b)(2)(A) (Vernon Supp. 2005). Bessey timely appealed and now raises six issues
before this Court. We overrule each issue and affirm.
I. Illegal Search
          In his first point of error, Bessey contends the trial court reversibly erred by
overruling his motion to suppress evidence. The testimony from the suppression hearing
revealed Bessey's estranged wife, Virginia Bessey,


 had found "some additional tapes at
her home in Camp Joy . . . ." (These videotapes showed Bessey molesting several
different children, including some of the victims in this case.) Virginia contacted Upshur
County Sheriff's Deputy Roxanne Warren regarding these videotapes and turned them
over to Warren. However, when Virginia found the videotapes, she had not been living at
the house; she had only been returning periodically to feed the dogs. Before obtaining the
videotapes from Virginia, Warren did not first obtain a search warrant. Bessey now
contends the videotapes are the product of an illegal search and seizure because Virginia
was acting as an agent for the State when she searched the home and found the
videotapes now in question. 
          A trial court's decision to admit or exclude evidence is reviewed for abuse of
discretion. Mitchell v. State, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996); Randon v.
State, 107 S.W.3d 646, 651 (Tex. App.—Texarkana 2003, no pet.). If the trial court's
evidentiary ruling is correct under any theory applicable to the case, we must sustain the
court's decision to overrule the motion to suppress. Gonzalez v. State, No. PD-0247-05,
2006 Tex. Crim. App. LEXIS 1129, at *33 & *35 n.48 (Tex. Crim. App. June 21, 2006);
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Felan v. State, 44 S.W.3d
249, 253 (Tex. App.—Fort Worth 2001, pet. ref'd). 
          "It is a 'basic principle of Fourth Amendment law that searches and seizures inside
a home without a warrant are presumptively unreasonable.'" Brigham City, Utah v. Stuart,
547 U.S. ___, at *3, 126 S.Ct. 1943, 1947, 164 L.Ed.2d 650, 657, 2006 U.S. LEXIS 4155,
at *9, 74 U.S.L.W. 4253 (2006) (quoting Groh v. Ramirez, 540 U.S. 551, 559 (2004) (some
internal quotation marks omitted)). However, the Fourth Amendment does not require the
exclusion of evidence that is the product of a search or seizure conducted by a private
party. Walter v. United States, 447 U.S. 649, 656 (1980) (referencing Burdeau v.
McDowell, 256 U.S. 465 (1921); Coolidge v. New Hampshire, 403 U.S. 443, 487–90
(1971)); see also Cobb v. State, 85 S.W.3d 258, 271 (Tex. Crim. App. 2002). To
determine whether a private citizen should be deemed an "agent of the state," both the
United States Supreme Court and the Texas Court of Criminal Appeals have adopted the
following test: "[I]n light of all the circumstances, the private citizen must be regarded as
acting as an instrument or agent of the state." Coolidge, 403 U.S. at 488; State v.
Comeaux, 818 S.W.2d 46, 49 (Tex. Crim. App. 1991) (plurality opinion).
          Bessey cites McCuller v. State, 999 S.W.2d 801 (Tex. App.—Tyler 1999, pet. ref'd),
for the proposition that, if the private citizen conducts the search and seizure for the
express purpose of gathering evidence for the prosecution, such evidence must be
excluded. In McCuller, the defendant was accused of injury to an elderly person, and the
search at issue was conducted by the administrator of the homeowner's estate. Id. at
802–03. The administrator had employed the services of a locksmith to gain entry to the
house, and "No Trespassing" signs were posted at each entrance to the home. Id. at 802. 
There had been an ongoing dispute in the probate proceedings between the administrator,
the heirs, and McCuller regarding who had the right to possess (or enter) the home. Id. 
In fact, the estate had begun eviction proceedings against McCuller, but those proceedings
were not final before the administrator gained entry into the home. Id. at 803. The Tyler
Court of Appeals found the evidence showed the administrator had violated Section 30.05
of the Texas Penal Code (criminal trespass) by entering the home without legal or
constructive authority.


 See Tex. Pen. Code Ann. § 30.05 (Vernon 1994). In so doing, the
evidence obtained as a result of the private citizen's illegal entry to the premises was
subject to suppression because of Article 38.23 of the Texas Code of Criminal Procedure. 
McCuller, 999 S.W.2d at 804–05; see Tex. Code Crim. Proc. Ann. art 38.23 (Vernon
2005).
          In this case, the State presented evidence in the trial court suggesting Virginia, who
was still Bessey's legal wife, already had access to the home and had been feeding
animals that were there. Bessey and Virginia still shared bills and other expenses, though
Virginia apparently had constructive custody of the couple's children and lived elsewhere. 
Virginia had a key to the home, and, according to Warren, Virginia said she also had the
owner's permission to be in the home.


 Bessey presented no evidence that either he or
the homeowner had imposed (or attempted to impose) any limits on Virginia's access to
"her" home during this time in question. We are, therefore, left with the reasonable
assumption that her access to the entire house was unfettered. Before finding the
videotapes, Virginia had not been told by Warren to notify him if any evidence turned up
in the house. The situation in this case is, therefore, factually distinguishable from the
situation presented in McCall. Clearly Virginia had a right to be in the home: she had a
key, she had permission from the homeowner, and her access was unrestricted. In light
of these facts, as well as the dearth of evidence regarding any pre-existing agreement
between Virginia and any state official to act as an agent of the State, we are unpersuaded
by Bessey's argument that Virginia was acting as an agent of the State.


 Accordingly, the
trial court properly concluded the Fourth Amendment's prohibition against warrantless
searches does not serve to exclude the videotapes at issue. We overrule Bessey's first
point of error.
II. Adequacy of Guilty Plea Admonishments
          In his second point of error, Bessey contends the trial court failed to properly
admonish him regarding the consequences of his guilty plea. Before accepting an
accused's guilty plea, a trial court is required to admonish the defendant about the
following:
(1) the range of the punishment attached to the offense;
 
(2) the fact that the recommendation of the prosecuting attorney as to
punishment is not binding on the court. Provided that the court shall inquire
as to the existence of any plea bargaining agreements between the state and
the defendant and, in the event that such an agreement exists, the court
shall inform the defendant whether it will follow or reject such agreement in
open court and before any finding on the plea. Should the court reject any
such agreement, the defendant shall be permitted to withdraw his plea of
guilty or nolo contendere;
 
(3) the fact that if the punishment assessed does not exceed the
punishment recommended by the prosecutor and agreed to by the defendant
and his attorney, the trial court must give its permission to the defendant
before he may prosecute an appeal on any matter in the case except for
those matters raised by written motions filed prior to trial;
 
(4) the fact that if the defendant is not a citizen of the United States of
America, a plea of guilty or nolo contendere for the offense charged may
result in deportation, the exclusion from admission to this country, or the
denial of naturalization under federal law; and
 
(5) the fact that the defendant will be required to meet the registration
requirements of Chapter 62, if the defendant is convicted of or placed on
deferred adjudication for an offense for which a person is subject to
registration under that chapter.
 
Tex. Code Crim. Proc. Ann. art. 26.13(a) (Vernon Supp. 2005).
          Before accepting Bessey's plea, the trial court admonished him regarding the
available punishment range for each offense being tried. See Tex. Code Crim. Proc. Ann.
art. 26.13(a)(1). The trial court did not administer the remaining admonishments required
by Article 26.13. See Tex. Code Crim. Proc. Ann. art. 26.13(a)(2–5). Therefore, the trial
court erred by failing to comply with the requirements of Article 26.13. Such error must,
however, be preserved in the trial court by raising an objection. Rhea v. State, 181 S.W.3d
478, 484 (Tex. App.—Texarkana 2005, pet. ref'd) (citing Tex. R. App. P. 33.1; Mendez v.
State, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004)). Bessey lodged no objection during
trial that the trial court had failed to fully comply with Article 26.13. And, unlike Rhea,
Bessey did not raise this issue in his motion for new trial. Accordingly, Bessey has not
preserved this issue for our review.
III. Parole Instruction
          In his third point of error, Bessey contends the trial court erred by submitting an
inaccurate parole instruction to the jury. "The function of the jury charge is to instruct the
jury on applying the law to the facts." Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim.
App. 1994). "[A]n erroneous or an incomplete jury charge jeopardizes a defendant's right
to jury trial because it fails to properly guide the jury in its fact-finding function." Id. "An
erroneous or incomplete jury charge, however, does not result in automatic reversal of a
conviction." Id. Instead, Article 36.19 of the Texas Code of Criminal Procedure outlines
the path this Court should follow to review error in the charge: "[F]irst, the court must
determine whether error actually exists in the charge, and second, the court must
determine whether sufficient harm resulted from the error to require reversal." Id. at
731–32 (citing Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 1981), and referencing
Gibson v. State, 726 S.W.2d 129, 132 (Tex. Crim. App. 1987)). The subsequent
evaluation of whether "sufficient harm" shall be found to require reversal "depends upon
whether appellant objected." Abdnor, 871 S.W.2d at 732. "Where there has been a timely
objection made at trial, an appellate court will search only for 'some harm.'" Id. "By
contrast, where the error is urged for the first time on appeal, a reviewing court will search
for 'egregious harm.'" Id. (citing Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App.
1986); Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). 
"Egregious harm consists of errors affecting the very basis of the case or that deprive the
defendant of a valuable right, vitally affect a defensive theory, or make the case for
conviction or punishment clearly and significantly more persuasive." Blumenstetter v.
State, 135 S.W.3d 234, 240 (Tex. App.—Texarkana 2004, no pet.). The degree of harm
demonstrated by the appellant must be actual, not merely theoretical. Almanza, 686
S.W.2d at 174; Taylor v. State, 146 S.W.3d 801, 804 (Tex. App.—Texarkana 2004, pet.
ref'd).
          If a defendant is to be sentenced by a jury for the offense of aggravated sexual
assault, our law requires trial courts to give juries the following instruction regarding parole:
          Under the law applicable in this case, the defendant, if sentenced to
a term of imprisonment, may earn time off the period of incarceration
imposed through the award of good conduct time. Prison authorities may
award good conduct time to a prisoner who exhibits good behavior, diligence
in carrying out prison work assignments, and attempts at rehabilitation. If a
prisoner engages in misconduct, prison authorities may also take away all or
part of any good conduct time earned by the prisoner.
 
          It is also possible that the length of time for which the defendant will
be imprisoned might be reduced by the award of parole.
 
          Under the law applicable in this case, if the defendant is sentenced to
a term of imprisonment, he will not become eligible for parole until the actual
time served equals one-half of the sentence imposed or 30 years, whichever
is less, without consideration of any good conduct time he may earn. If the
defendant is sentenced to a term of less than four years, he must serve at
least two years before he is eligible for parole. Eligibility for parole does not
guarantee that parole will be granted.
 
          It cannot accurately be predicted how the parole law and good
conduct time might be applied to this defendant if he is sentenced to a term
of imprisonment, because the application of these laws will depend on
decisions made by prison and parole authorities.
 
          You may consider the existence of the parole law and good conduct
time. However, you are not to consider the extent to which good conduct
time may be awarded to or forfeited by this particular defendant. You are not
to consider the manner in which the parole law may be applied to this
particular defendant.
 
Tex. Code Crim. Proc. Ann. art. 37.07, § 4 (Vernon Supp. 2005) (emphasis added)
(referencing Tex. Code Crim. Proc. Ann. art. 42.12, § 3g (Vernon Supp. 2005)). In the
case now before us, the trial court gave the following instruction:
7. 
          Under the law applicable in this case, the defendant, if sentenced to
a term of imprisonment, may earn time off the period of incarceration
imposed through the award of good conduct time. Prison authorities may
award good conduct time to a prisoner who exhibits good behavior, diligence
in carrying out prison work assignments and attempts at rehabilitation. If a
prisoner engages in misconduct, prison authorities may take away all or part
of any good conduct time earned by the prisoner.
 
          It is also possible that the length of time for which the defendant will
be imprisoned might be reduced by the award of parole.
 
          Under the law applicable to this case, if the defendant is sentenced
to a term of imprisonment, he will become eligible for parole when the actual
time served plus any good conduct time equals one-half of the sentence
imposed. Eligibility for parole does not guarantee that parole will be granted.
 
          It cannot be accurately predicted how the parole law and good
conduct time might be applied to this defendant if he is sentenced to a term
of imprisonment, because the application of these laws will depend on
decisions made by prison and parole authorities.
 
          You may consider the existence of the parole law and good conduct
time. However, you are not to consider the extent to which good conduct
time may be awarded to or forfeited by this particular defendant. You are not
to consider the manner in which the parole law may be applied to this
particular defendant.
 
(Emphasis added.)
          Comparing the italicized portions of the statutory charge and the charge actually
given, it is clear the trial court erred by suggesting Bessey's good conduct time would count
toward his parole eligibility. Bessey did not object to the erroneous instruction at trial. He
must, therefore, demonstrate egregious harm on appeal. See Almanza, 686 S.W.2d at
171.
          To determine whether egregious harm exists, we must examine "the entire jury
charge, the state of the evidence (including contested issues and the weight of the
probative evidence), the argument of counsel, and any other relevant information revealed
by the record as a whole." Taylor, 146 S.W.3d at 810 (citing Stokes v. State, 74 S.W.3d
48, 50 (Tex. App.—Texarkana 2002, pet. ref'd); see Almanza, 686 S.W.2d at 171). 
Bessey's brief on appeal makes no effort to evaluate egregious harm under the factors
required by Almanza. As such, this point of error has been inadequately briefed. See Tex.
R. App. P. 38.1. Instead, Bessey's only argument is that the fact that he received the
maximum sentence is sufficient evidence he suffered egregious harm. We disagree. A
maximum sentence is not, ipso facto, egregious harm. Moreover, the jury was specifically
instructed not to consider how parole law or good conduct time might be applied to Bessey. 
There is nothing in the record to suggest the jury considered how parole or good conduct
time might apply to Bessey. We overrule Bessey's third point of error.
IV. Improper Jury Argument
          Bessey contends, in his fourth point of error, that the State made an improper jury
argument regarding parole. The argument about which Bessey complains was as follows:
The next thing I want to point out is on page 3 where it was talking about
parole. Now you can't sit here and try to figure out how parole will apply in
Mr. Bessey's case, but you can take into account the fact that it's possible
that he may only do half of whatever you assess. And if you've noticed, you
have a range of punishment on the first degree counts that goes anywhere
from five to Life. On the second degree counts [sic] it goes two to twenty. 
And if you notice, I jumped immediately into parole because, see, I don't
think this is a case where probation is an option. See, this is a case where
we have multiple acts, we have multiple victims. This is not a case where it
was just one person. I don't think parole [sic] is an option.
 
          The Texas Court of Criminal Appeals has said there are four proper areas of jury
argument: "(1) summation of the evidence presented at trial; (2) reasonable deduction
drawn from that evidence; (3) answer to the opposing counsel's argument; or (4) a plea for
law enforcement." Jackson v. State, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000). As
illustrated by this case, we believe a fifth area—long recognized as proper for jury
argument, but not usually included in the laundry list—should be added: the trial court's
charge to the jury. Assuming, without deciding, that the State's argument did not, viewed
as a whole, constitute a plea for law enforcement, it was clearly a fair comment on an
instruction given in the trial court's charge to the jury. 
          Further, Bessey acknowledges he failed to object at trial to the State's argument. 
He also acknowledges that such failure may waive error, if any. Bessey is correct. Unless
the State's argument is "so egregious that no instruction to disregard could possibly cure
the harm," the failure to object waives any alleged error. Willis v. State, 785 S.W.2d 378,
385 (Tex. Crim. App. 1989). 
           We note that the State specifically reminded the jury that it could not—and should
not—attempt to calculate what portion of a sentence Bessey might actually serve. This
statement by the State, when combined with the trial court's written instruction that the jury
was not to consider what effect parole law might have on Bessey's sentence, should have
been sufficient to cure any alleged error in the State's closing summation. Therefore, we
cannot say the State's argument in this case rises to the level of egregious harm. 
Accordingly, Bessey's failure to object to any alleged improper argument failed to preserve
the alleged error.
V. Allowing Dr. Hall to Testify When He Was Not Previously Listed As a Witness
          In his fifth point of error, Bessey contends the trial court erred by permitting Dr. John
Hall to testify during the rebuttal portion of the State's punishment case. More specifically,
Bessey claims the trial court erred because Hall was purportedly not included on the
State's list of potential witnesses. At trial, however, Bessey first objected to Hall's
testimony for a different reason. Bessey first claimed that Hall should not be allowed to
testify, not because Hall was an unlisted witness, but because Bessey did not receive
advance notice Hall would be testifying about "rehabilitation or punishment." It is clear
Bessey's objection on appeal does not comport with his initial objection presented at trial. 
Accordingly, nothing has been preserved for our review. See Tex. R. App. P. 33.1;
Mumphrey v. State, 155 S.W.3d 651, 656 (Tex. App.—Texarkana 2005, pet. ref'd)
(because trial objection did not match appellate issue, error regarding improper admission
of expert testimony not preserved). 
          Hall initially testified as to his background and credentials, and then, generally,
concerning the treatment of pedophiles. Bessey interrupted this testimony with a further
objection, in the middle of which he stated that "nothing has been furnished to me showing
that Dr. Hall was going to testify." To the extent this further objection was consistent with
Bessey's objection now on appeal, it was untimely. To preserve error, the objection must
be made at the earliest possible opportunity. Marini v. State, 593 S.W.2d 709, 714 (Tex.
Crim. App. [Panel Op.] 1980); In re G.A.T., 16 S.W.3d 818, 828 (Tex. App.—Houston [14th
Dist.] 2000, pet. denied); see Stults v. State, 23 S.W.3d 198, 205–06 (Tex. App.—Houston
[14th Dist.] 2000, pet. ref'd). We overrule Bessey's fifth point of error. VI. Ineffective Assistance

          Finally, Bessey contends he received ineffective assistance of counsel at trial
because trial counsel (1) "failed to lodge a proper objection to the inaccurate parole
instruction," (2) "failed to make a timely and specific objection to the State's closing
argument," and (3) "failed to ensure the record was "clearer regarding the continuation of
certain pretrial motions as they related to all indictments." 
          To prevail on a claim of ineffective assistance of counsel, an appellant must prove
trial counsel's performance fell below objective standards of professional norms and that,
but for such deficiency, the outcome of the trial would have been different. Strickland v.
Washington, 466 U.S. 668 (1984); Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App.
2002). It is critical that an appellant demonstrate the record shows both the alleged
deficiency(ies) and the alleged prejudice. Bone, 77 S.W.3d at 833–34; Thompson v. State,
9 S.W.3d 808, 813 (Tex. Crim. App. 1999). A failure to prove either prong will defeat the
ineffective assistance claim. Thompson, 9 S.W.3d at 813.
          Bessey's brief to this Court makes no effort to demonstrate how the record
demonstrates prejudice under Strickland's second prong. Accordingly, we must overrule
Bessey's second issue as being inadequately briefed. See Tex. R. App. P. 38.1(h). 
Moreover, the Texas Court of Criminal Appeals has often reminded the bench and bar that
"[i]n the majority of instances, the record on direct appeal is simply undeveloped and
cannot adequately reflect the failings of trial counsel." Thompson, 9 S.W.3d at 813–14. 
The record in this case is silent as to why trial counsel did not object to the State's closing
argument, did not object to the parole instruction, and did not take other steps to see that
the rulings for pretrial motions filed in other cases were made applicable to this case. We
could reasonably presume a strategic justification to support each alleged deficiency. 
Further, although the record is silent as to these matters, it affirmatively shows that trial
counsel was diligent, thorough, and aggressive in his representation of Bessey. The
record before us belies Bessey's claim that his trial counsel was ineffective. 
 
 
VII. Conclusion
          For the reasons stated, we overrule each of Bessey's points of error and affirm the
trial court's judgment.




                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      June 13, 2006
Date Decided:         August 2, 2006

Publish